LOCKE et al. v. McPHERSON, Appellant.

Division One, June 12, 1901.

1. **Married Woman's Estate:** DISTRIBUTION. When a married woman dies intestate, leaving personal property that she had held in her lifetime as her statutory separate estate, it passes to her administrator and is distributed on final settlement according to the same statutes that directed the course of distribution of any other intestate's estate.

2. ———: ———: RIGHT OF HUSBAND OF ANOTHER STATE. A citizen of New York, who marries a woman in Missouri, has no title to his wife's personal estate here on her dying in this State without descendants. The law of this State requires the estate of any person who, at the time of his decease, was an inhabitant of any other State, when the administration is taken here, to be distributed and disposed of according to the laws of such State, but this does not give the husband immediate title to the wife's estate who died here (even though it be conceded that a wife who was married here and ever afterwards lived here, was an inhabitant of New York, where her husband lived). Such statute operates only after there has been an administration, and since New York has no law governing distribution, after administration, of the estate of a wife who dies without descendants, there is no "law of such State" which can operate upon the estate here or control its distribution, it being the law there that on the death of the wife without descendants her separate personal estate immediately, without administration, becomes the property of her husband by virtue of the marriage, according to the course of the common law. *Hence,* where a woman of

this State was married to a citizen of New York in February, and without having left this State died here in March, leaving personal property of her own, an administrator should be appointed to administer and distribute the estate according to the laws of Missouri, and the estate should not be turned over to her husband.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

AFFIRMED.

*John H. Overall* for appellant.

(1)  The domicile of the deceased, from the moment of her marriage, was in the State of New York.  The term "Domicile" as of married women, or in other words, matrimonial domicile, may mean :  First.  The actual home of the man at the time of the marriage.  Dicey Dom., pp. 42, 44, 331, discussed in Stewart, M. & D., pars. 222, 223.  Second.  The intended joint home of the man and woman at the time of the marriage.  Third.  The home acquired by the husband after the marriage.  "The husband's domicile is, in law, the domicile of his wife."  Stewart, M. & D., par. 221; Sheever v. Wilson, 8 Wall. 124; Minor v. Cardwell, 37 Mo. 356.  "A woman, of whatever age, acquires at marriage the domicile of her husband, and her domicile continues to be the same as his throughout their married life."  5 Am. and Eng. Ency. of Law, p. 868; Davis v. Davis, 30 Ill. 180; Green v. Green, 11 Pick. (Mass.), 410; Mason v. Hoener, 105 Mass. 116; Hartean v. Hartean, 14 Pick. (Mass.) 181; Hood v. Hood, 11 Allen (Mass.) 196; Hariston v. Hariston, 27 Miss. 704; s. c., 61 Am. Dec. 530; Bank v. Mitchell, 28 N. J. L. 516; McPherson v. Housel, 13 N. J. Eq. 35; Baldwin v. Flagg, 43 N. J. L. 495; McAfee v. Kentucky University, 7 Bush (Ky.), 135; Hanbery

v. Hanbery, 29 Ala. 719; Sanderson v. Ralston, 20 La. Ann. 312; Dugat v. Markham, 2 La. R. 35; Succession of Christee, 20 La. Ann. 363; Succession of McKenna, 23 La. Ann. 369; Warrender v. Warrender, 2 Cl. & F. 488; Dolphin v. Robbins, 7 H. L. C. 390; In Daly's Settlement, 25 Beav. 356; Gilis v. Gilis, Ir. R. 8 Eq. 597; Niboget v. Niboget, L. R. P. D. 1; Chichester v. Donegal, 1 Add. Eccl. 5; Kemna v. Brookhaus, 10 Biss. (U. S.) 134; Barber v. Barber, 21 How. (U. S.) 582; Burnham v. Rangely, 1 Woodb. & M. (U. S.) 7; Bennett v. Bennett, Deady (U. S.), 299; Dow v. Gould, 31 Cal. 629; Hollister v. Hollister, 6 Pa. St. 449; Dougherty v. Snyder, 15 S. & R. (Pa.) 84; School Directors v. James, 2 W. & S. (Pa.), 568; Johnson v. Turner, 29 Ark. 280; Ditson v. Ditson, 4 R. I. 87; Green v. Windham, 13 Me. 225; Knox v. Waldborrough, Greenl. (Me.) 445; Danbury v. New Haven, 5 Conn. 584; Bank v. Balcom, 35 Conn. 351; Russell v. Randolph, 11 Tex. 460; Lacey v. Clements, 36 Tex. 661; Jenness v. Jenness, 24 Ind. 355; Collum v. White, 23 Ind. 43; Ensor v. Graff, 43 Md. 391; Brown v. Lynch, 2 Bradf. (N. Y.) 214; Vischer v .Vischer, 12 Barb. (N. Y.) 640; Paulding's Will, Tuck. (N. Y.) Surrogate R. 47; Lipscone v. N. J. R. Trans. Co., Lans. (N. Y.); Smith v. Moorehead, 6 Jones Ep. (N. Car.) 369; Harkins v. Arnold, 46 Ga. 656; Swaney v. Hutchins, 13 Neb. 266; Johnson v. Johnson, 12 Bush (Ky.) 485. "A woman marrying takes her husband's domicile, and changes it with him." 2 Parsons on Contracts (1 Ed.), p. 93; Warrender v. Warrender, 9 Bligh, 104; Cumner v. Melton, 2 Salk. Rep. 528; Wooden v. Raulskury, 2 Lord Ragin, 1473; Freetown v. Taunton, 16 Mass. 52. (2) By the rule of the common law, all personal property and choses in action of the deceased, vested in her husband at the time of and concurrent with her decease, subject only to the payment of her debts. (3) Under the statutes of New

York the husband of a wife dying intestate without leaving any descendants surviving her, becomes the owner of and is authorized to hold all the personal property of the wife. (4) By the statutes of Missouri the succession and distribution of personal property, found in this State, of persons having their domicile in some other State, are governed by the laws of the State of the domicile of the deceased.

*John R. Myers, Geo. E. Smith* and *Adiel Sherwood* for respondents.

(1) When any person having title to any real estate of inheritance, or personal estate undisposed of, or otherwise limited by marriage settlement, shall die intestate as to such estate, it shall descend and be distributed, in parcenary, to his kindred, male and female, subject to the payment of his debts and the widow's dower, in the following course: first, to his children, or their descendants, in equal parts; second, if there be no children, or their descendants, then to his father, mother, brothers and sisters, and their descendants, in equal parts. Sec. 2908, R. S. 1899. (2) The common-law theory, that the domicile of the husband is the domicile of the wife, and the personal property descends according to the law of the domicile, has no application to this case: first, because the deceased, Mary B. McPherson, had her domicile in the city of St. Louis at the time of her decease, and had had for many years prior thereto; second, because the whole estate of deceased was, at the time of her death, and had always been, in the city of St. Louis and State of Missouri; third, because the common-law theory of descent and distribution is abrogated by an express statute, and because the deceased's residence and domicile was fixed by law. Sec. 2908, R. S. 1899; sec. 4160, R. S. 1899, clause 17. (3) The statute of descents and distributions in

Locke v. McPherson.

Missouri makes no distinction between the descent of real and personal property, but in express terms directs that both real and personal property shall go to and vest in certain designated persons. Sec. 2908, R. S. 1899. (4) This court indulges every presumption of law and of fact in favor of the correctness of the rulings of the trial court, and in favor of sustaining the judgment. Long v. Long, 96 Mo. 180; Jayne v. Mine, 98 Mo. 404; Smith v. Johnson, 107 Mo. 494; State v. Dawson, 124 Mo. 421. (5) There were no instructions asked for nor given in the trial court, and, therefore, appellant is concluded by the finding and judgment of the lower court. Haniford v. The City of Kansas, 103 Mo. 182; R. S. 1899, sec. 864. (6) Prima facie, at common law, the domicile of the wife was that of the husband. This was not conclusive and could not be held conclusive, because, from the necessities of the case, the rule had to be changed from time to time. This harsh rule of the common law was modified by necessity from time to time, both in this country and in England. Schouler on Husband and Wife, sec. 390. (7) In this State, where this marriage was celebrated, this personalty was the separate property of the wife, and nothing passed to the husband here at the date of the marriage; as the locality of the property was not changed and the wife never left Missouri, the property belonging to her could not have been transferred to New York without her consent in writing, and which must show unequivocally her intention and purpose to give the property to the husband, and there can be no implication about it. Blair v. Railroad, 89 Mo. 390; Broughton v. Brand, 94 Mo. 169; Gilliland v. Gilliland, 96 Mo. 525; Benne v. Schnecko, 100 Mo. 250; Hart v. Leete, 104 Mo. 315; McGuire v. Allen, 108 Mo. 412; Leete v. Bank, 115 Mo. 204; Bank v. Winn, 132 Mo. 80;

Leete v. Bank, 141 Mo. 583; Winn v. Riley, 151 Mo. 66.   It is undeniably true that this wife could have made a contract here in Missouri immediately after her marriage contract, transferring her property to any person or place, and with the performance of any such contract the husband would have no right to interfere.   The wife is, therefore, with respect to her separate property in this State, *sui juris,* and she may be estopped by her course of dealing with strangers, but, as against her husband, she can only be estopped by an express intention and purpose in writing to give him her property.   McGuire v. Allen, 108 Mo. 412.   (8) It is the established law of Missouri that, at the death of the owner, personal property passes to the administrator, and his title thereto vests in the administrator, and that no heir can sue for the same, even if he owns the entire property, after the payment of debts.   And so far is this true that the administrator's right is conclusive on the distributees.   Becraft v. Lewis, 41 Mo. App. 553; Naylor v. Maffit, 29 Mo. 126.   Not only this, but the heirs can not sue for any injury to personal property belonging to the estate. Smith v. Denny, 37 Mo. 20; Hellman v. Wellenkamp, 71 Mo. 407.

VALLIANT, J.—This suit arises in the administration of the estate of Mary B. McPherson, deceased, and concerns its distribution; the contest is between the respondents who were the brothers, claiming as distributees, and the appellant, who was the husband of the intestate.

The facts are as follows:   On February 20, 1895, the intestate, who up to the date was Mary B. McVean, intermarried with the appellant, William J. McPherson.   At the date of her marriage she was living in St. Louis and had resided there for several years and owned considerable real and personal property in this State.

The appellant, William J. McPherson, was then and for many years had been and has since continued to be a resident and citizen of New York. .They were married in St. Louis, but it was her intention to go with her husband to his home in New York, and that was to be their residence. But her going was deferred until she might dispose of her house here. Her husband returned to his home leaving her in St. Louis, where in a few days she was taken ill and died March 22, 1895, it being little more than one month after her marriage. She died intestate, leaving no descendants. Her two brothers are her next of kin. The Mississippi Valley Trust Company was appointed administrator of her estate in this State, and paid all debts for which it was liable, and has on hand a considerable amount of personal property for distribution and is ready to make final settlement. The husband was appointed administrator in New York, and, claiming to be the domiciliary administrator and also claiming as surviving husband, filed his petition in the St. Louis Probate Court, asking that the Missouri administrator turn over to him the personal property in hand. The probate court decided in his favor, but on appeal to the circuit court the judgment was that the estate be distributed to the two brothers, from which judgment the husband has taken this appeal.

The sole question is, whether the estate is to be distributed according to the statutes of this State relating to descents and distributions, or according to the law of New York determining the rights of a husband in personal property that belonged to his deceased wife in her lifetime.

There is an interesting and learned discussion in the briefs of counsel on the question whether the deceased, who was up to that time a resident and citizen of this State, became on her marriage a resident and citizen of New York, or an inhabitant

of that State within the meaning of our statute presently quoted.

If the view we have taken of the subject in the end is correct it would not be decisive of this case to concede that appellant is right in his contention that at the instant of her marriage the wife became an inhabitant of New York. Appellant's proposition is that immediately upon the marriage the abode of the husband in New York became the abode of the wife and although her sudden illness and death prevented her removal in fact, and her death occurred in this State, yet she was at that time, in contemplation of law, an inhabitant of New York and her personal property here is to be distributed according to the laws of New York.

Our statute on which appellant relies is: "When administration shall be taken in this State on the estate of any person, who at the time of his decease was an inhabitant of any other State or country . . . . his personal estate shall be distributed and disposed of according to the laws of the State or country of which he was an inhabitant." [R. S. 1899, sec. 254.]

This has been the statute law of this State since 1845 (R. S. 1845, p. 102, sec. 19), and has been repeated without change in all revisions since that date. At the origin of the enactment our statute in regard to the property rights of married women was not in existence; we are not therefore forced to construe it as applying to such case unless its provisions naturally embrace it. Assuming for the present that the intestate at the time of her death was an inhabitant of New York, the difficulty in applying that statute to this case is that in New York, there is no statute of distribution applying to the estate of a married woman dying without descendants. The law of that State in reference to the administration of the estate of an intestate does not recognize that a married woman, without a

Locke v. McPherson.

descendant, has an estate in personal property to pass in succession at her death. The surviving husband in such case takes the estate, not as distributee or under the statute of distributions, but by the title that vested in him at his marriage by the common law to all his wife's personal property and choses in action. There is in that State a statute making the personal property owned by a woman at the date of her marriage her separate estate, but according to the decisions to which we have been referred construing it, the effect of that statute, in a case like this, is only to suspend the husband's common-law marital rights during the life of his wife.

The statutes and decisions of New York bearing on the rights of the parties were in evidence at the trial in the circuit court, and the appellant, being himself a distinguished lawyer of that State, was a witness, and testified as an expert on that subject. It was shown that the common law prevailed there except as altered by statute; the statute of distribution was shown in evidence with this clause, of date 1813: "The preceding provisions respecting the distribution of estates shall not apply to personal estates of married women; but their husbands may demand, recover and enjoy the same as they are entitled by the rules of the common law." Then in 1848 the statute above mentioned, making a married woman's personal property her separate estate, was passed, and afterwards, in 1867, the above-quoted clause of the statute of distributions was amended to read as follows:

"The preceding provisions respecting the distribution of estates shall apply to the personal estates of married women dying leaving descendants them surviving; and the husband of any such deceased married woman shall be entitled to the same distributive share in the personal estate of his wife to which a widow is entitled in the personal estate of her deceased husband by the provisions of this chapter and no more."

In Barnes v. Underwood, 47 N. Y. 351, the Court of Appeals had under consideration the subject of the rights of a husband who had survived his wife, in the personal estate left by her, she leaving no descendants, and those statutes were construed. It was pointed out in that case that at common law the marriage was an absolute gift to the husband of the personal property of which the wife was possessed, and also as to choses in action reduced to possession during coverture, but as to those not reduced to possession during her life, the husband was entitled to administer on her estate and reduce them to possession in that way for his own use. But it was shown that the title he derived to the property was not under the statute of distributions but under the common law, whereby he had the right to administer and thereby appropriate the property to his own use; and that such was the common-law right incident to all administrators until the statute of distributions of 22 and 23 Car. II was enacted, which in terms, like the New York statute of 1813, above quoted, excepted from its operation estates of married women. The court then takes up for consideration the clause of the statute of 1813 and its amendment in 1867 as both are above quoted. The language of the court, .l. c. 356, is: "Section 75 contains provisions respecting the distribution of estates of deceased persons; but it is obvious, in view of the provisions of the twenty-ninth and thirtieth sections and the entire absence of any provisions for the husband, that they were not intended to apply to the estates of married women leaving surviving husbands, but, to remove all doubt, the seventy-ninth section was enacted, expressly exempting such estates from their operation, and declaring that their husbands' 'may demand, recover and enjoy' such estates, as they are entitled to by the rules of the common law." Section 79 referred to is the clause of the statute of 1813 as above quoted. Then, after pointing out that the amendment of 1867 applied only

when the deceased wife left descendants, the court referred to the statute of 1848 and 1849 giving the wife the separate estate in her personal property and said: "The statute of 1848 and 1849 did not affect this right. Those statutes gave the wife control of her separate estate, with power of testamentary disposition during her life; but, if she died intestate, the rights of her husband, as her successor, are not affected. They prevent the husband from recovering possession and acquiring title during coverture, but they do not prevent administration by him, and consequent enjoyment of the property, upon the death of the wife. He has the same rights to property which he can not reduce to possession, by reason of the statutes, that he had to that which he did not reduce to possession before the statutes were passed."

The subject was again before the court in Robins v. McClure, 100 N. Y. 328, and it was then held that what was said in Barnes v. Underwood, supra, to the effect that the husband derived his title to the personal property left by his deceased wife by virtue of his right to administer, was not in accord with the former decision of that court and was not approved; the court said: "The rule of the common law, which authorized the husband to hold the property of his wife, by virtue of administration, has been extended in this State, so as to enable him to hold the same also by virtue of his marital rights, and numerous cases sustain this doctrine."

Then follows a discussion in which it is shown that, whilst the husband has the right to administer, his title to the property does not depend on his doing so but exists *jure mariti*, even in spite of the administration by another. The court then concludes that the married woman's statutes of 1848 and 1849 made no change in the husband's common-law rights to her personal property left at her death, and that he took it not by virtue of his right to administer, not by way of succession, and

not by force of any statute of distribution, but by force of the common law, which gave him title *jure mariti* to his wife's personal property.

If, therefore, we are to follow the decisions of the New York Court of Appeals, to which we are referred, in order to adjudge the appellant entitled to the estate in question, we must hold that by virtue of his marriage in Missouri he acquired title to all her personal property subject only to her right to the sole use and disposal of it during her life, and independent of our statutes directing the distribution of estates of intestates. Our married woman's statute makes no exception in favor of a non-resident husband. If the appellant in this case by his marriage acquired such a title to his wife's personal property every husband marrying in this State a woman with personal property acquires a like right. This court has never yet put such a construction on our married woman's act. When a married woman dies intestate leaving personal property that she had held in her lifetime as her statutory separate estate, it passes to her administrator and is distributed on final settlement according to the same statutes that direct the course of distribution of any other intestate's estate.

Section 254, Revised Statutes 1899, above quoted, and on which the appellant relies by its very terms, applies only to property that belonged to the intestate in his lifetime and which becomes, on final settlement, a subject of distribution according to the laws directing the course of distribution of such estates. It was enacted long before we had a statute taking away the husband's common-law marital rights to his wife's personal property and therefore did not contemplate the wife's peculiar estate. It directs that when the estate is ready for distribution it shall be distributed according to the laws of the State or country of which the intestate was an inhabitant. But in this case, if the intestate was an inhabitant of New York, we

can not distribute her estate according to the laws of that State because under the laws of that State the statute of distributions does not apply to the estate of a married woman dying without descendants, for the reason that under the law of that State there was no estate to distribute; it belonged to the surviving husband by his common-law marital rights. To give section 254 application to this case we must construe it as referring, not to the foreign statute of distribution, but to the foreign law regulating the respective rights of husband and wife incident to marriage. And we must say also that it modifies the effect of our statute relating to the separate property of married women. If we are to recognize that a citizen of New York marrying in this State acquires, by virtue of his marriage, the interest in his wife's estate owned here, that he would have acquired if he had married in his own State a wife owning like property there, we would also have to recognize the absolute rights of a husband coming from a State or country where the common law on the subject was unabridged. We do not recognize any such qualification of the rights of married women under our statute. Since, therefore, the husband did not, by virtue of his marriage here, acquire such title to his wife's personal property as he would have acquired to such property in New York if they had been married there, and since there is no statute of distributions in New York by which he can take the estate, he has no title to it. Section 254, above quoted, is but a legislative expression of a well-recognized rule of private international law, but since we find no foreign law to govern the case in hand, that statute has no application and we must administer the estate according to our own statutes.

There are other questions discussed in the briefs, but as the propositions above considered disposes of the whole case, there will be no necessity for deciding them.

The judgment of the circuit court is affirmed. All concur.