# GRIMES v. REYNOLDS, Administrator, Appellant.

## (No. 1)

### Division Two, December 13, 1904.

1. **ADMINISTRATION: Claim by Husband Against Deceased Wife's Estate.** A note given by a wife to her husband during their coverture for money borrowed of him by her may be proved up by him in the ordinary way in the probate court as a demand against her individual estate after her death. In view of the Married Woman's Statute the husband is not required to resort to a court of equity to establish such demand. [Disapproving Lindsay v. Archibald, 65 Mo. App. 117, and following Rice, Stix & Co. v. Sally, 176 Mo. 107, and approving Grimes v. Reynolds, 94 Mo. App. 576.]

2. ———: ———: **Procedure in Equity.** Whether or not the demand of a husband against his deceased wife's estate be regarded as legal or equitable, if it is one for the payment of a definite sum of money it is enforceable just as any other like demand against her estate is enforceable.

3. ———: ———: ———: **Probate Court.** In Missouri, the probate court has jurisdiction to allow demands for the direct payment of money, whether those demands are by nature legal or equitable.

4. ———: ———: **Married Woman's Statute.** The intention of the Legislature in enacting the Married Woman's Statute (sec. 4335, R. S. 1899) was to remove the disabilities under which a married woman labored at common law, so as to permit her to contract and be contracted with, sue and be sued, and the language used, being entirely without exception, is broad enough to permit her to contract with her husband, and her contracts with him will be enforced at law, just as if she had contracted with third persons. [Following and approving Rice, Stix & Co. v. Sally, 176 Mo. 107.]

5. **INTERPRETATION OF STATUTES: Intent.** All other rules for the interpretation of statutes are subject to the one that the object of all rational interpretation is to reach the true intent and meaning of the lawmaking authority as expressed in the language employed to convey its thought.

6. ———: **Another Rule.** Another principle of interpretation which must be closely adhered to is to consider all the statutes treating of the same subject, so that the meaning of any particular provision may be enlightened by a view of the general purpose pervading the entire law on the subject.

Transferred from St. Louis Court of Appeals.

AFFIRMED.

*Pearson & Pearson* for appellant.

(1) A probate court has no jurisdiction to adjudicate and allow claims of the husband against his deceased wife's estate upon contracts made during coverture. Lindsay v. Archibald, 65 Mo. App. 120; Davis v. Smith, 75 Mo. 227; Boston v. Murray, 94 Mo. 181. (2) A husband contracting with his wife has no personal cause of action against her which would survive against her representative. Bank v. McMenamy, Admr., 35 Mo. App. 205; Lindsay v. Archibald, supra; Clifton v. Anderson, 40 Mo. App. 622; Davis v. Smith, supra. (3) The probate court has no jurisdiction over this cause, nor has it over any claim that a husband may have against a wife, arising out of a contract made between them during coverture. And for this reason this judgment should be reversed. (a) A married woman can not become a debtor to her husband. If she gives him a note, "all that can be said of it is that it is an anomalous obligation, neither binding her nor her estate, general or separate, but only constituting a foundation for a proceeding in equity of which her separate property may be subjected to its payment, and until a decree to that effect be rendered, it is never a lien nor a charge upon the estate." Nicholson v. Flynn, 24 Mo. App. 578; Van Rheeden v. Bush, 44 Mo. App. 286; Davis v. Smith, supra. (b) The probate court has no power or jurisdiction to order the sale of land in which a married woman had a separate estate, to

pay debts contracted during coverture, which in equity would be a charge on her land. Boston v. Murray, 94 Mo. 181; Davis v. Smith, 75 Mo. 227. (4) The judgment in this case is void, and for that reason should not be allowed to stand. This case was treated and tried by both the court and the plaintiff as an ordinary legal demand against an ordinary estate, and an ordinary judgment at law was rendered and entered against the administrator of plaintiff's wife. Even though probate courts have equitable jurisdiction to hear and try claims, yet they must be tried as equitable claims and not as legal demands, and a decree entered accordingly. Baer v. Pfaff, 44 Mo. App. 41. (5) In regard to contracting with each other, the Married Woman's Act of 1889 (sec. 4335, R. S. 1899), does not change the relation between husband and wife, but leaves them where the statute found them. Hiltenbrandt v. Robitsch, 62 Mo. App. 439; Ilgenfritz v. Ilgenfritz, 49 Mo. App. 138; McCorkle v. Goldsmith, 60 Mo. App. 480.

*Frank J. Duvall* and *J. D. Hostetter* for respondent.

The probate court has by the Constitution jurisdiction "over all matters pertaining to probate business." Art. 6, ch. 34, Const.; Gentry v. Gentry, 122 Mo. 222; Green v. Tittman, 124 Mo. 378. And by statute jurisdiction to hear and determine all demands against the estates of deceased persons. This has, by the more recent decisions of our courts, been construed to include all money demands whether legal or equitable. Hoffmann v. Hoffmann's Exr., 126 Mo. 493; Hammons v. Renfro, 84 Mo. 341. Its jurisdiction has recently been upheld in offsetting the debt of an heir to the deceased against a legacy or distributive share coming to such indebted heir, which matters were formerly cognizable only in a court of chancery. Leitman, Exr. v. Leitman, 149 Mo. 117; Duffy v. Duffy, 155 Mo. 144. It is upon

this idea that the probate court has "jurisdiction in all matters pertaining to probate business," which includes the allowance of demands against estates that the surviving wife was permitted by this court to have allowed against her deceased husband's estate on certain notes given her by him while they were husband and wife. Hoffman v. Trust Co., 68 Mo. App. 177; Reynolds v. Reynolds, 65 Mo. App. 415. It may be conceded that while the marital relation continues neither husband nor wife can sue the other at law, but, as was said in Hoffmann v. Hoffmann's Exr., 126 Mo. 494, "the contract between husband and wife does not change the nature of the demand as presented to the probate court. The relation of husband and wife ceased on the death of the husband." Even prior to the Married Woman's Act of 1889 a wife could prove her claims against her deceased husband's estate in the probate court, where her separate personal estate was involved. Todd v. Terry, 26 Mo. App. 598. A great deal of confusion on this question has resulted from loose and inexact expressions contained in the decisions of our Courts of Appeals. The case of Lindsay v. Archibald, 65 Mo. App. 117, cited by appellant, is not only out of line with the decisions of this court, but also with other decisions of the Kansas City Court of Appeals. That case seems to advance the doctrine that neither the surviving husband nor any other person can prove up a demand against a deceased wife's estate in the ordinary way, and cites in support thereof a number of decisions rendered prior to the Married Woman's Act of 1889. Prior to the act of 1889 a married woman could not bind herself personally by her contract, but was presumed to intend to bind only her separate property, which could only be enforced against her in equity. Since the act of 1889 she can contract with the freedom of a *femme sole*.

FOX, J.—This cause was certified to this court by the St. Louis Court of Appeals in obedience to the man-

date of the Constitution, because of the conflict between the decision announced by that court and the one announced by the Kansas City Court of Appeals, in the case of Lindsay v. Archibald, 65 Mo. App. 117.

The opinion by BARCLAY, J., of the St. Louis Court of Appeals is as follows:

"This case originated in the probate court of Pike county, Missouri, by the presentment for allowance of a demand against the estate of Nancy M. Grimes, deceased. The claimant, John M. Grimes, was her husband. He is the regular administrator of her estate. In view of plaintiff's adverse claim against the estate Mr. Courtland Reynolds was appointed administrator for the time, in accordance with the statute on that subject (R. S. 1899, sec. 205).

"The demand is based on a promissory note for $286.60, dated, February 1, 1900, payable one day after date, without interest, to the order of plaintiff, and is signed by N. M. Grimes.

"In the probate court there was a hearing in which both parties were represented. The court found in favor of the plaintiff and allowed his demand against the estate, with interest. Afterwards, in due course, defendant took an appeal to the circuit court where the claim was tried anew, with like result, neither party requiring a jury. The judgment was in the usual form, allowing plaintiff's demand against said estate in the sum of $270.42 and costs, in the fifth class. The allowance was ordered certified to the probate court in due form.

"Defendant thereupon appealed to the St. Louis Court of Appeals in the ordinary way.

"There is no dispute in regard to the facts of the case. The questions involved are purely questions of law.

"The plaintiff, John M. Grimes, and the deceased, Nancy M. Grimes, were husband and wife and so remained until her death in May, 1900. They were mar-

ried in 1897. She made the note to her husband, the plaintiff, as described. It was founded upon the unquestionable consideration of money loaned, as proven by the testimony of a disinterested witness at the hearing.

"The note was in the usual form of such obligations. It is one of the two which plaintiff desires to have established as demands against his wife's estate. The other note is the subject of a different suit, tried at the same time with this and appealed along with it.

"It was in evidence that Mrs. Grimes was the owner of real property in the State of Missouri when she married plaintiff; and that she acquired other realty during the marriage and that said property produced income to her. All these facts were undisputed.

"The trial court found in favor of the plaintiff and allowed the demand as already stated, just as the probate court had done.

"The case is narrowed into this shape: whether or not a note given by a wife to her husband during their coverture for money borrowed of him by her may be proved up by him in the ordinary way as a demand against her individual estate after her death.

"1. It is singular that this is not a perfectly simple proposition; but it does not seem to be entirely free of difficulty.

"The chief contention of appellant is that no court can take cognizance of such a claim except a court of equity.

"The justice of the obligation itself is not controverted. No testimony was tendered by defendant which might in any respect challenge the consideration of the note. Defendant plants himself behind the supposed rule of procedure forbidding a husband to sue his wife and contends that, whatever remedy plaintiff may have, he has none in the probate court where this proceding originated.

"Although the existing legislation governing the

relation of husband and wife and defining their reciprocal rights in the property of each other may have created new difficulties of interpretation, it is our duty to attempt their solution patiently and with due respect for the purposes and spirit of that legislation.

"It is by no means necessary to review at any length the steps which have brought our laws concerning married women into their present form. The entire chapter on that subject (R. S. 1899, ch. 51) exhibits a series of enactments, evolved from time to time, all pointing to a certain general purpose. The most sweeping of these provisions are sections 4335 and 4340 (R. S. 1899) and of them the more important in its bearing on this litigation is the former, the terms of which it may be well to repeat here:

"'Sec. 4335. *Wife deemed femme sole, for what purposes.*—A married woman shall be deemed a *femme sole* so far as to enable her to carry on and transact business on her own account, to contract and be contracted with, to sue and be sued, and to enforce and have enforced against her property such judgments as may be rendered for or against her, and may sue and be sued at law or in equity, with or without her husband being joined as a party: *Provided,* a married woman may invoke all exemption and homestead laws now in force for the protection of personal and real property owned by the head of a family, except in cases where the husband has claimed such exemption and homestead rights for the protection of his own property.'

"Before the passage, in 1889, of the law last quoted, some very definite rulings had been made touching the right of husband and wife to make contracts with each other in cases where the wife possessed a separate estate.

"In Morrison v. Thistle, 67 Mo. 596, a case which arose out of transactions in 1871, before the enactment of that part of section 4340, Revised Statutes 1899,

which first appeared in Missouri in 1875 as a new act (Laws 1875, p. 61) a wife having a separate estate in equity, executed a note to her husband, and it was held to be a valid equitable charge against her estate. Judge SHERWOOD, speaking for the whole court, said that husband and wife might contract and 'become the creditor or debtor of each other, with like effect, so far as regards equitable contemplation and rights, as if they had never become one flesh.'

"The same doctrine was applied in other Missouri cases of which we mention a very few, some of which held that even gifts between husband and wife were valid in equity, to say nothing of more perfect contracts. [Meyer v. McCabe, 73 Mo. 236; Turner v. Shaw, 96 Mo. 22; Botts v. Gooch, 97 Mo. 88; State ex rel. v. Jones, 83 Mo. App. 151.]

"These precedents were founded on well-known precepts of English jurisprudence as applied in courts of chancery, according to recognized authorities cited in some of the opinions mentioned.

"It was well-settled law, before the enactment of section 4335 (R. S. 1899), that such a contract of a wife with a husband as is here in suit was valid and enforceable in courts of chancery against her separate estate in equity, without invoking any of the modern statutory provisions conferring on married women the power to make contracts concerning her own property.

"So far as concerns the right of suit between husband and wife, it is well to notice a passage in the code of procedure:

" 'A married woman may, in her own name, with or without joining her husband as a party, sue and be sued in any of the courts of this State having jurisdiction, with the same force and effect as if she was a *femme sole,* and any judgment in the cause shall have the same force and effect as if she were unmarried.' [R. S. 1899, sec. 546.]

"The foregoing section first appeared as section

1996, Revised Statutes 1889. It is interesting to notice the evolution of the Missouri law in this phase of the topic. Some steps in that process are quite significant in their bearing on our present inquiry.

"In the revision of the General Statutes of 1865 (p. 651, sec. 8) it is provided:

" 'When a married woman is a party, her husband must be joined with her, except that: First, when the action concerns her separate property, she may sue and be sued alone; second, when an action is between herself and her husband, she may sue and be sued alone. But when her husband cannot be joined with her, as herein provided, she shall prosecute or defend by her next friend.'

"That section was amended in 1868 so as to read as follows (Laws 1868, Adj. Sess. p. 87):

" 'When a married woman is a party, her husband must be joined with her in all actions except those in which the husband is plaintiff only and the wife defendant only, or the wife plaintiff and the husband defendant; and in all such actions where the husband is plaintiff and the wife defendant, or the wife plaintiff and the husband defendant, it shall be lawful for the wife to sue or defend by her agent or attorney, as she may think proper, and in all actions by husband and wife, or against husband and wife, they may prosecute the same by attorney, or they, or either, may defend by attorney; and it shall not be necessary for the wife in any such case to sue with her husband by next friend, or to appear and defend by next friend.'

"By the revision of 1879 that section was amended so as to read thus (R. S. 1879, sec. 3468):

" 'When a married woman is a party, her husband must be joined with her in all actions, except those in which the husband is the sole plaintiff and the wife the sole defendant; or the wife a plaintiff and the husband a defendant, and in all such actions it shall be lawful for the wife to sue or defend, by her agent or

attorney, as she may think proper, and in all actions by husband and wife, or against husband and wife, they may prosecute the same by attorney; or they, or either, may defend by attorney; and it shall not be necessary for the wife, in any such case, to sue with her husband by next friend, or to appear and defend by next friend.'

"In arriving at the legislative intention in any given law it is not merely useful, but often imperative, to examine the previous condition of the written law and of the decisions construing it in order to discover what was the purpose aimed at by the amendment, the better to give such interpretation to the last law as will carry out the design for which it was framed.

"The object of all rational interpretation is to reach the true intent and meaning of the law-making authority as expressed in the language it has employed to convey its thought. All other rules are subordinate to that great one.

"Another principle of interpretation which must be closely adhered to is to consider all the statutes treating of the same subject-matter, so that the meaning of any particular provision may be enlightened by a view of the general purpose pervading the entire law of the subject.

"The statute defining the rights of married women in respect to the control of their own property should be read in conjunction with the laws which provide remedies to enforce the rights conferred, remembering the maxim that a grant of power or of right is usually construed to include such incidents as will make the principal grant effective.

"Giving due effect to the spirit and purpose of the legislation on this subject, what conclusion should be drawn touching the plaintiff's right to prove up against the estate of his wife an entirely meritorious demand for borrowed money, evidenced by the note in suit? Must the plaintiff be driven out of court in order

that he may enter the temple of justice by some other doorway than that which he has tried?

"We think not.

"The situation is not precisely that which is pictured by defendant. The marriage relation between plaintiff and his wife has been dissolved by death. That fact gives plaintiff quite a different standing from that which he would have if his wife was living. Even under the doctrines of the common law a suitor might enforce against the estate of a deceased spouse many claims founded on contract which could not be asserted during the lifetime of the other party. [King v. Green, 2 Stew. (Ala.) 133.]

"The reason of policy which, under the ancient English law, forbade an action at law between husband and wife did not apply to cases where that intimate relation has been terminated. The reason ceased in those circumstances, and therefore the rule itself was considered inapplicable. [Blake v. Blake, 64 Me. 177.]

"In Missouri it has been adjudged that the jurisdiction of our probate court reaches the allowance of all demands for the direct payment of money, whether those demands are legal or equitable by nature. [Hammons v. Renfrow, 84 Mo. 341; Hoffmann v. Hoffmann's Ex., 126 Mo. 486.]

"In Todd v. Terry, 26 Mo. App. 598, a widow maintained a demand for a sum of money against her deceased husband's estate, in course of administration, although her demand was brought forward in the probate court and was confessedly founded on facts giving her the position of a creditor in equity only. That case has been so positively approved and followed that its authority is beyond question. [Winn v. Riley, 151 Mo. 61; Reynolds v. Reynolds, 65 Mo. App. 415; Maginn v. Green, 67 Mo. App. 616; Church v. Church, 73 Mo. App. 421.]

"In Clark v. Clark, 86 Mo. 114, a promissory note

by a husband to his wife was held valid in a suit at law by them both (in the interest of the wife) against the husband's surety on the paper. In the course of the opinion the court intimated that the supposed difficulty created by the law, in force when that case arose, to bar a direct law action between husband and wife, was not to be extended beyond the precise exigency of the policy out of which the difficulty arose. To quote the court: 'An infirmity extending to the mode or remedy for enforcing her demand against her husband does not extend to, or impair, the right itself.' So it was held that her equitable right of claim against her husband was a sufficient foundation for an action at law against another person standing in the attitude of his surety.

"In the case at bar, plaintiff needs no enabling act to invest him with competency to sue or to contract. He is a man, and whether or not his demand be regarded as legal or equitable it is merely one for payment of a definite sum of money and as such is enforceable against his wife's estate as any other like demand against that estate is enforceable.

"In a recent opinion of the first division of the Supreme Court it was declared that the estate of a married woman was to be administered like any other estate because of the broad terms of our statute touching administration. [Locke v. McPherson, 163 Mo. 493.]

"Winn v. Riley, 151 Mo. 61, is another late case, in the first division of the Supreme Court, applying the principle which should govern this appeal. There a husband appropriated certain funds, the separate property of his wife. After his death she successfully maintained a probate demand therefor against his estate.

"In one of the latest Missouri decisions defining the legal status of a married woman, it was held, in a very carefully considered opinion by Judge SHERWOOD,

for the majority of the Court in Banc, that under the
broad terms of section 4335 (R. S. 1899) a wife would
be bound by a contract made by her alone for the con-
veyance of her land to secure her note, because she had
power 'to contract with and deal with strangers, or,
indeed, with any one else' to the full extent of her
property rights. That case and Woodward v. Wood-
ward, 148 Mo. 241, are especially important, in that
the legislation in question is therein viewed and treated
as remedial rather than in derogation of the common
law.

"Those cases are authority to this court.

"If the contract of the wife in the present action
was valid, either at law or in equity, it would be a
solid and meritorious foundation for an allowance
against her estate in administration in Missouri, ac-
cording to the best-considered decisions in our State,
which give effect to the true spirit and intent of legis-
lation here on the rights and obligations of married
women.

"2.  In Lindsay v. Archibald, 65 Mo. App. 117,
it was held by the Kansas City Court of Appeals (re-
versing a judgment of Judge Rucker) that a husband
could not prove up against a wife's estate a claim
for cash advanced as a loan to her during her lifetime,
although she owned and managed separate property
and kept a separate bank account. The learned appel-
late court in that case is officially reported to have held
that neither the husband nor any other creditor could
prove up a claim against her estate in administration
in the ordinary way, but that all creditors had to go
into equity to obtain satisfaction for such demands.
That decision was announced in 1896. That cause
of action arose in 1891, according to the state-
ment of facts in the opinion. The decision con-
tains an able exposition of common law principles
which might apply to such a case in the absence of
our statutes, but it does not notice the distinction which

the death of the wife creates, touching a right of action in the survivor. The effect of the ruling would be to compel a resort to a court of equity by every creditor of a woman who died possessed of a separate statutory estate. It cites as authority a decision of the St. Louis Court of Appeals in McCorkle v. Goldsmith, 60 Mo. App. 475. But the facts of the last-mentioned case were distinguishable in this: that the relation of husband and wife had been severed by death in the Lindsay case though it still existed in the McCorkle suit. Nevertheless, neither of those cases is in full accord with the cases in the Supreme Court which we have cited.

"3. The fact that in the case before us the plaintiff is competent to sue, and the estate of the wife, not the wife herself, is defendant, relieves us of the necessity of inquiring whether under our existing statutes and precedents a husband or wife may maintain a direct suit against each other. We confine our ruling strictly to the facts of the case in hand. We hold that those facts fall within reach of the principles we find announced in the cases we have mentioned.

"4. We regret that our conclusion in the premises is in conflict with the decision of the Kansas City Court of Appeals in the Lindsay case, 65 Mo. App. 117, which is directly in point on the facts as well as on the law involved.

"The judgment is affirmed with the concurrence of BLAND, P. J., and GOODE, J." [94 Mo. App. 576.]

This opinion is a full, fair and able discussion of the legal proposition involved in this case. It is only necessary to add, as emphasizing the correctness of the views expressed and conclusions reached by the learned and esteemed judge of the St. Louis Court of Appeals, what was said by this court, in Banc, in Rice, Stix & Co. v. Sally, 176 Mo. l. c. 129. GANTT, J., speaking for the court in that case, in discussing the act of the Legis-

lature which is before us for construction in this case, said:

"The more recent cases by the St. Louis Court of Appeals, decided since the preparation of the brief by counsel for the respondent interpleader, to-wit, Grimes v. Reynolds, 94 Mo. App. 576, Grimes v. Reynolds, 94 Mo. App. 589, and Beagles v. Beagles, 95 Mo. App. 338, disapprove both Lindsay v. Archibald, 65 Mo. App. 117, and McCorkle v. Goldsmith, 60 Mo. App. 475, and follow Locke v. McPherson, 163 Mo. 493, and Winn v. Riley, 151 Mo. 61, and hold that a proper construction of our Married Woman's Acts, supra, leads to the complete emancipation of the wife from her matrimonial bonds, so far as her property rights are concerned, in law, as well as in equity, and that she may contract with her husband and sue and be sued by him at law."

The conclusions upon the question presented in that case were thus expressed:

"After a careful consideration we are of opinion that the intention of our Legislature was to remove the disabilities under which a married woman labored at common law, so as to permit her to contract and be contracted with, sue and be sued, and that the language used, being entirely without exception, is broad enough to permit her to contract with her. husband, and that her contracts with him will be enforced at law, just as if she had contracted with third persons, and this, we think, is the weight of judicial opinion in other States where statutes no broader than ours have been construed."

The opinion of Judge Barclay clearly and correctly declares the law applicable to the proposition presented in this case, and the judgment of the trial court should be affirmed, and it is so ordered. *Gantt, P. J.* concurs; *Burgess, J.,* absent.