## BRONSON v. BRADY.

HUSBAND AND WIFE; ACTIONS; PROMISSORY NOTES; AFFIDAVITS OF DE-
FENSE.

1. D. C. Code, sec. 1151 [31 Stat. at L. 1373, chap. 854], was intended to, and does, authorize contracts between husband and wife, and gifts from husband to wife, except as to property acquired by the wife from her husband in prejudice of the rights of his creditors. (Citing *Dodge* v. *Rush, ante,* 150.)

2. Whether under D. C. Code, secs. 1151, 1154 [31 Stat. at L. 1373, 1374, chap. 854], a wife may maintain an action at law on a promissory note made by him and payable to her, she is nevertheless authorized by sec. 1154 to transfer it, and her transferee may maintain an action on it against the husband.

3. In an action on a promissory note by the holder against the maker, an affidavit of defense is insufficient which states that the payee was the wife of the maker; that the plaintiff, her transferee, did not acquire the note until after its maturity; and that the plaintiff did not receive it without notice or for value, but merely as agent of the payee.

No. 1681.   Submitted October 16, 1906.   Decided November 7, 1906.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, for want of a sufficient affidavit of defense, in an action on a promissory note. *Affirmed.*

The COURT in the opinion stated the facts as follows:

Appeal from judgment of the supreme court of the District of Columbia.

On February 2, 1906, appellee, Edmund Brady, filed suit at law against appellant, Simon D. Bronson, to recover the sum of $3,000, with interest thereon at 4 per cent per annum until paid, as the owner and holder of a note for that amount made by appellant. To his declaration appellee attached an affidavit in accordance with the 73d common-law rule of the supreme court of the District, and, as particulars of demand, copy of said note and assignment thereof, as follows:

Washington, D. C.
July 28th, 1905.

Six months After Date I wil- pay Mrs. Win-fred Bronson $30000.00 Thousand Dollars Dollars with 4 Per Cent Entrest until Paid.

S. D. Bronson.

For value received I hereby transfer, set over and assign unto Edmund Brady all my right, title and interest in and to the above note for Three Thousand Dollars, dated July 28, 1905, signed by S. D. Bronson and made payable to me six months after date with interest at four per cent. per annum until paid.

,Winifred Bronson.

Note.—Indorsed, Mrs. Winifred Bronson.

Appellant filed plea of general issue and attached thereto an affidavit of defense under the above rule. This affidavit set up the defense that the payee named in said note was the wife of appellant; that appellee did not acquire said note until after

maturity thereof; and that appellee did not receive said note without notice or for value, but merely as agent of the payee.

The plaintiff below then moved for judgment under the above rule, and judgment was accordingly entered, and defendant below noted and perfected his appeal to this court.

*Mr. Alexander H. Bell, Mr. E. H. Thomas,* and *Mr. David N. Houston,* for the appellant:

1. Statements of fact upon information and belief, with expectation to show at the trial, in an affidavit of defense, are sufficient. Endlich, Affidavits of Defense, pp. 290, 321; *Long* v. *Long,* 60 Atl. 759; *Magruder* v. *Schley,* 17 App. D. C. 230.

2. The plea of coverture may be given under the general issue. Chitty, Pleading, pp. 476, 477. Gould, Pl. p. 306, secs. 47, 51.

3. The transferee of negotiable paper, to whom it is transferred after maturity, acquires nothing but the actual right and title of the transferer. 1 Dan. Neg. Inst. (5th ed.) §§ 724a, 725a.; *Herrick and Burnside* v. *Swomley,* 56 Md. 465.

4. Contracts between husband and wife were void *ab initio* at common law. 4 Am. & Eng. Enc. Law, 2d ed. p. 173; 15 Am. & Eng. Enc. Law, 2d ed. p. 854; *Sweat* v. *Hall,* 8 Vt. 107; *Bank of Rahway* v. *Brewster,* 49 N. J. L. 231; *Ellsworth* v. *Hopkins,* 58 Vt. 705; *Ingham* v. *White,* 4 Allen, 412; *Roby* v. *Phelon,* 118 Mass. 541.

5. Such contracts are now void, unless express statutory power is given the wife to contract with the husband and *vice versa.* 1 Randolph, Com. Paper, p. 528; *Hendricks* v. *Isaacs,* 117 N. Y. p. 411; *McCorkle* v. *Goldsmith,* 60 Mo. App. 475; *Francis* v. *Norwood,* 25 App. D. C. 463.

6. A maker of a note given by husband to wife, or *vice versa,* may defeat a recovery against him or her in an action brought by the indorsee or payer on the ground that the note was given to the spouse of the maker and therefore a nullity. 4 Am. & Eng. Enc. Law, p. 173.

*Mr. G. E. Hamilton, Mr. M. J. Colbert,* and *Mr. J. J. Hamilton* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

The case is here submitted, without argument, upon the briefs.

The brief on behalf of appellant assigns as error that "the court erred in holding the affidavit of defense to be insufficient in point of law and granting the motion for judgment," and, in the argument upon this assignment of error, takes the position that "a maker of a note given by husband to wife, or *vice versa,* may defeat a recovery against him or her in an action brought by the indorsee or payee on the ground that the note was given to the spouse of the maker, and therefore a nullity."

The basis of our decision must necessarily be our construction of the Code of the District of Columbia with reference to the rights of married women. The act of Congress of April 10, 1869 (16 Stat. at L. 45, chap. 23), entitled "An Act Regulating the Rights of Property, of Married Women in the District of Columbia," reads as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That in the District of Columbia the right of any married woman to any property, personal or real, belonging to her at the time of marriage, or acquired during marriage *in any other way than by gift or conveyance from her husband,* shall be as absolute as if she were *femme sole,* and shall not be subject to the disposal of her husband, nor be liable for his debts; but such married woman may convey, devise, and bequeath the same, or any interest therein, in the same manner and with like effect as if she were unmarried.

"Sec. 2. And be it further enacted, That any married woman may contract, and sue and be sued in her own name, in all matters having relation to her sole and separate property in the same manner as if she were unmarried; but neither her husband nor his property shall be bound by any such contract nor liable for any recovery against her in any such suit, but

judgment may be enforced against her sole and separate estate in the same manner as if she were sole."

In 1874 in "the Revision of the Statutes Relating to the District of Columbia," the above act became sections 727 to 730, inclusive, of "The Revised Statutes of the United States relating to the District of Columbia," reading as follows:

"Sec. 727. In the District the right of any married woman to any property, personal or real, belonging to her at the time of marriage, *or acquired during marriage in any other way than by gift or conveyance from her husband,* shall be as absolute as if she were unmarried, and shall not be subject to the disposal of her husband, nor be liable for his debts.

"Sec. 728. Any married woman may convey, devise, and bequeath *her property,* or any interest therein, in the same manner and with like effect as if she were unmarried.

"Sec. 729. Any married woman may contract, and sue and be sued in her own name, in all matters having relation to her sole and separate property, in the same manner as if she were unmarried.

"Sec. 730. Neither the husband nor his property shall be bound by any such contract, made by a married woman, nor liable for any recovery against her in any such suit, but judgment may be enforced by execution against her sole and separate estate in the same manner as if she were unmarried."

This statute was in turn superseded by the act of June 1, 1896 (29 Stat. at L. 193, chap. 303), the first two sections of which are as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the property, real and personal, which any woman in the District of Columbia may own at the time of her marriage, and the rents, issues, profits, or proceeds thereof, and real, personal, or mixed property which shall come to her by descent, devise, purchase, or bequest, *or the gift of any person,* shall be and remain her sole and separate property, notwithstanding her marriage, and shall not be subject to the disposal of her husband or liable for his debts, *except that such property as shall come to her by*

*gift of her husband shall be subject to, and be liable for, the debts of the husband existing at the time of the gift.*

"Sec. 2. That a married woman, while the marriage relation subsists, *may bargain, sell, and convey her real and personal property,* and enter into any contract in reference to the same in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property, and she may, by a promise in writing, expressly make her separate estate liable for necessaries purchased by her or furnished at her request for the family."

This act of 1896 was codified in the Code of the District of Columbia, enacted March 3, 1901 (31 Stat. at L. 1189, chap. 854), sections 1151 and 1154 of which read as follows:

"Sec. 1151. All the property, real, personal, and mixed, belonging to a woman at the time of her marriage, *and all such property which she may acquire or receive after her marriage from any person whomsoever, by purchase, gift, grant, devise, bequest, descent,* in the course of distribution, by her own skill, labor, or personal exertions, or as proceeds of a judgment at law or decree in equity, or in any other manner, *shall be her own property, as absolutely as if she were unmarried,* and shall be protected from the debts of the husband, and shall not in any way be liable for the payment thereof: Provided, *That no acquisition of property passing to the wife from the husband after coverture shall be valid if the same has been made or granted to her in prejudice of the rights of his subsisting creditors."*

"Sec. 1154. Married women shall hold all their property, of every description, for their separate use as fully as if they were unmarried, and shall have power to dispose of the same by deed, mortgage, lease, will, gift, or otherwise, as fully as if they were unmarried: Provided, That no disposition of her real or personal property, or any portion thereof, by deed, mortgage, bill of sale, or other conveyance, shall be valid if made by a married woman under twenty-one years of age."

A gradual, but nevertheless decided, change has taken place in the status of women, until to-day their sphere of activity embraces almost every avenue of business, almost every profession, and almost every calling. With this change has come a demand

for a corresponding recognition of their rights in the statutes of the States and nation. A careful examination of these statutes discloses that the tendency of the times is to emancipate married women from the harshness and disabilities of the common law, and to place them upon an equal footing with men. As was said by this court in the recent case of *Dodge* v. *Rush, ante,* 150: "The underlying ground of the common-law rule of discrimination between husband and wife  *  *  *  has been swept away by the modern legislation that has so generally relieved the wife of the ordinary disabilities of coverture."

A brief review of various State decisions construing statutes similar to the statute applicable to this case will be helpful.

In the case of *Heyman* v. *Heyman,* 210 Ill. 524, 71 N. E. 591, a decision of the appellate court sustaining a decree of the circuit court, that a business was carried on as a copartnership between husband and wife as copartners, and that one half of the assets of the partnership belonged to the wife, was in turn sustained by the supreme court of that State. The court, after stating the general rule to be that "a partnership cannot exist between husband and wife," said: "Such, however, cannot be the law in Illinois. Section 6 of chapter 68 of the Revised Statutes of Illinois, being the act to revise the law in relation to husband and wife, provides as follows: 'Contracts may be made and liabilities incurred by a wife, and the same enforced against her, to the same extent and in the same manner as if she were unmarried; but, except with the consent of her husband, she may not enter into or carry on any partnership business, unless her husband has abandoned or deserted her, or is idiotic or insane, or is confined in the penitentiary.'  *  *  *  It has been held by this court that, under the existing law in this State, married women are placed on the same footing as *femes sole* in respect to all property rights, including the means to acquire, protect, and dispose of the same; and that all restrictions upon the power of husband and wife to contract with each other, except so far as they are expressly retained, are removed. It thus appears that husband and wife may contract with each other without restriction, except that the wife may not enter

into or carry on any partnership business 'except with the consent of her husband.' The plain inference is that she may carry on a partnership business if she has the consent of her husband, and, as she may make contracts with him, there is no reason why she may not make a partnership contract with him, or a contract for a partnership business with him, where she obtains his consent thereto."

While this was an equity case, the capacity of a wife to contract generally with her husband was clearly recognized.

The case of *Hamilton* v. *Hamilton,* 89 Ill. 349, involved a contract between husband and wife pending the suit by the latter for divorce, by which the husband agreed to convey certain land to the wife and pay her $500. The contract was held invalid as apparently made in furtherance of the divorce proceedings which were pending, and hence against public policy; but the court expressly held that such a contract, not being prohibited by the statute, would have been valid had it not been against public policy, saying: "The question chiefly discussed in this case is that of the capacity of plaintiff, at the time of contract, to contract with her husband. This statute of March 30, 1874 (Rev. Stat. 576), goes much further in abolishing disabilities arising from coverture than any former statute. By it a wife may sue and be sued as if unmarried; an attachment or judgment may be enforced against her as if she were unmarried; she may defend in her own right when sued with her husband: 'contracts may be made and liabilities incurred by a wife \* \* \* as if she were unmarried,' except contracts of partnership; she may own in her own right real and personal property obtained by gift, descent, or purchase, and may convey the same as may the husband property belonging to him. There is nothing in all this which forbids her to contract with her husband, and the words are *general* and broad enough to sanction such contracts. Not only so, but it is provided in section 9 of the act, that where husband and wife shall be living together no transfer of goods between them shall be valid *as against* the rights of *third persons,* unless in writing, duly acknowledged and recorded. This provision necessarily implies that the former broad language of the statute was used in a

sense to authorize contracts between husband and wife, and make them effective in all cases for lawful purposes, except in so far as otherwise provided by the act itself. We find nothing in the act limiting her capacity to contract in this regard."

It will be noticed that the court in this case based its ruling upon the fact that the words of the statute were sufficiently broad and general to embrace such contracts, and that, in the absence of express language of prohibition, the court would sustain them.

Speaking of this same statute, in *Thomas* v. *Nueller,* 106 Ill. 36, the court said: "As to the management and control of her property the wife is almost entirely emancipated from all power of her husband. She may buy and sell property, and sue and be sued in reference to it, independent of his control, and the 8th section in terms limits their power to sue each other for compensation for labor performed or services rendered for the other, whether in the management of property or otherwise. From this it is manifest that the legislature intended to remove all restrictions on their power to contract with each other, and to enable them to sue each other on such contracts, in the same manner as if they were not married."

Section 4335 of the Revised Statutes of Missouri provides that "a married woman shall be deemed a *femme sole* so far as to enable her to carry on and transact business on her own account, to contract and be contracted with, to sue and be sued, and to enforce and have enforced against her property such judgments as may be rendered for or against her, and may sue and be sued, at law or in equity, with or without her husband being joined as a party;" and the supreme court of Missouri, in the recent case of *Rice* v. *Sally,* 176 Mo. 107, 75 S. W. 398, in construing this statute, said: "The more recent cases by the St. Louis court of appeals, decided since the preparation of the brief by counsel for respondent interpleader, to wit, *Grimes* v. *Reynolds,* 94 Mo. App. 576, 68 S. W. 588, and *Grimes* v. *Reynolds,* 94 Mo. App. 589, 68 S. W. 591, and *Beagles* v. *Beagles,* 95 Mo. App. 338, 68 S. W. 758, disapprove both *Lindsay* v. *Archibald,* 65 Mo. App. 117, and *McCorkle* v. *Goldsmith,* 60 Mo. App. 475, and follow *Locke* v. *McPherson,* 163 Mo. 493,

52 L.R.A. 420, 85 Am. St. Rep. 546, 63 S. W. 726, and *Winn* v. *Riley,* 151 Mo. 61, 74 Am. St. Rep. 517, 52 S. W. 27, and hold that a proper construction of our married woman's acts, *supra,* leads to the complete emancipation of the wife from her matrimonial bonds, so far as her property rights are concerned in law, as well as in equity, and that she may contract with her husband and sue and be sued by him at law.    *    *    *    Mrs. Sally's right to the goods seized by the sheriff under plaintiff's attachment depends entirely upon the validity of the chattel mortgage executed to her by her husband, the defendant in the attachment, and her possession thereunder.  That this transfer was enforceable in equity, if not made to defraud creditors of her husband, is not questioned; but can it be sustained at law, and in this form of procedure?  After a careful consideration we are of the opinion that the intention of our legislature was to remove the disabilities under which a married woman labored at common law so as to permit her to contract and be contracted with, sue or be sued, and that the language used, *being entirely without exception,* is broad enough to permit her to contract with her husband, and that her contracts with him will be enforced at law, just as if she had contracted with third persons, and this we think is the weight of judicial opinion in other States where statutes no broader than ours have been construed. Her right, then, being a legal one, we see no obstacle to her maintaining replevin or interpleading in an attachment case."

The language of the Missouri statute, it will be observed, is not as broad and comprehensive as the language in the Code of the District of Columbia.

Neither is the language of the Nebraska statute as broad as that of our Code, since the first three sections of it provide that:

"Sec. 1. The property, real and personal, which any married woman in this State may own at the time of her marriage, and the rents, issues, profits, or proceeds thereof, and any real, personal, or mixed property which shall come to her by descent, devise, or bequest, or the gift of any person *except her husband* [or she shall acquire by purchase or otherwise], shall remain her sole and separate property notwithstanding her marriage,

and not be subject to the disposal of her husband or liable for his debts.

"Sec. 2. A married woman, while the marriage relation exists, may bargain, sell, and convey her real and personal property, and enter into any contract with reference to the same in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property.

"Sec. 3. A woman may, while married, sue and be sued in the same manner as if she were unmarried." [Gen. Stat. 1873, chap. 41, p. 465.]

The Supreme Court of that State, in *May* v. *May,* 9 Neb. 16, 31 Am. Rep. 399, 2 N. W. 221, held that a wife while living with her husband could maintain suit against him in her own name on a note made by him. The defense set up in the answer was that the plaintiff was the wife of defendant. Justice Cobb delivered the opinion of the court, and, after reviewing the married woman's acts of Maine, Kansas, Iowa, Ohio, California, and New York, said: "In none of the above-mentioned States has the legislature passed any act which in terms changes the common law in regard to the nature and character of the married relation or the unity of the persons of husband and wife, and the above cases must of necessity have gone upon the theory that the statutes of the said states respectively defining the rights of women in the marriage relation in respect to the ownership, control, and disposition of property, have in effect done away with the technical unity of husband and wife as formerly existing at common law. At least such is my opinion. So that when our statute says that 'a married woman, while the marriage relation exists, may bargain, sell, and convey her real and personal property, and enter into any contract with reference to the same in the same manner, to the same extent, and with like effect as a married man may,' etc., it means that she may sell the same to, or contract with reference to the same with, anybody who is generally competent to contract, and that the other contracting party will be bound by such contract regardless of whatever relations may exist between them,"—and then went on to say: "But need we look further than to our

own statutes for authority upon which to decide this case? Our
Code provides that 'a woman may, while married, sue and be
sued in the same manner as if she were unmarried.'  *  *  *
This capacity to sue is not limited, and no·person or class of
persons is excepted from its effect. If she were unmarried there
could be no doubt that she could sue this same man. This
statute (as I understand it) plainly provides that she can do
the same thing though married to him.  *  *  *  The con-
clusion is therefore irresistible that the action at bar was proper-
ly brought, and that the district court erred in overruling the de-
murrer to the answer."

Without multiplying authorities, we may add that we have
been unable to discover any case where a similar statute has been
held not to authorize contracts between husband and wife. The
courts of some of the states, notably Massachusetts and Ver-
mont, have held such contracts invalid, but in each of those
States the statutes contained a provision expressly prohibiting a
married woman from contracting with her husband. The fact
that the legislatures of those two States deemed it necessary to
engraft this prohibition on the statute giving married women the
right to contract "in the same manner as if sole" adds cogency
to the decisions of courts of other States that the absence of
such a prohibition in similar statutes enables married women
to contract with their husbands.

Let us analyze the statutes applicable to this case.

The original act of 1869 recognized the right of a married
woman to the property belonging to her at the time of marriage
or acquired during marriage, excepting property acquired *"by
gift or conveyance from her husband."* The statute also per-
mitted her to "devise and bequeath the same."

In the law of 1874, as above quoted, the first section of the
act of 1869 was divided into two sections, and, instead of limit-
ing the right to bequeath *"the same"* property mentioned in the
first part of the section, she was permitted to "convey, devise,
and bequeath *her property,* or any interest therein, in the same
manner and with like effect as if she were unmarried." The
Supreme Court of the United States, in *Hamilton* v. *Rathbone,*
175 U. S. 414, 44 L. ed. 219, 20 Sup. Ct. Rep. 155, held that

this apparently slight change signified an intent on the part of Congress to remove the restriction in the original act, and therefore sustained a bequest by a wife of property she had acquired by gift from her husband.

This liberal construction by the Supreme Court has a distinct bearing upon the present case, for in the original act of 1869, by express prohibition, a married woman could acquire no separate property "by gift or conveyance from her husband," while in the act of June 1, 1896, *supra,* which superseded the original act of 1869 as amended by the act of 1874, Congress went one step further, and provided that she might hold as her separate property all property, real and personal, which she owned at the time of marriage, or which should come to her "by descent, devise, purchase, or bequest, *or the gift of any person,*" adding this provision, "except that such property as shall come to her by gift of her husband shall be subject to, and be liable for, the debts of the husband existing at the time of the gift," clearly indicating that she might acquire property by purchase or gift from her husband, and hold the same as her separate property, subject only to the liability of the property she should acquire by such gift to the debts of the husband then existing.

But the intent of Congress is made still plainer in sections 1151 and 1154 of the Code carrying forward the act of 1896 above quoted. These sections of the Code provide that all property, both real and personal, belonging to a married woman at the time of her marriage, *"and all such property which she may acquire or receive after marriage from any person whomsoever, by purchase, gift, grant,"* etc., "shall be her own property *as absolutely as if she were unmarried,"* provided, only, "that no *acquisition* of property passing to the wife from the husband after coverture shall be valid *if the same has been made or granted to her in prejudice of the rights of his subsisting creditors."*

An examination of the statutes applicable to married women in the District of Columbia irresistibly leads to the conclusion that section 1151 of the Code was intended to authorize, and does in fact authorize, contracts between, or gifts from, husband to wife, excepting only property acquired by the wife from her

husband in prejudice of the rights of his creditors. Indeed, the language of the Code is broader and more comprehensive than the language of the statutes in the various States, to which reference has been made, and which uniformly have been held to authorize contracts between husband and wife.

In this case it is unnecessary to inquire whether under the provisions of the Code a wife can maintain a suit at law against her husband for recovery on a note. We shall confine our ruling strictly to the facts in the case. The note, being her absolute and separate property, she was authorized by section 1154 of the Code to transfer or assign it, and the authority to sue the appellant was incident to appellee's title to the note.

Assuming, without deciding, that a technical bar, growing out of the marital relations, existed to such suit at law, that bar has been removed by the assignment of the note. The supreme court of Vermont, in the case of *Spencer* v. *Stockwell,* 76 Vt. 176, 56 Atl. 661, which was a suit on a note given the wife prior to coverture and after coverture indorsed by her to a third person for collection only, said: "It is further contended that, as the wife could not sue her husband upon the note, she could not give the plaintiff authority for that purpose. It is a sufficient answer to this claim that the wife retained every right in respect to the note after her marriage that she possessed before, except the right to sue her husband upon it. She could sell the note absolutely, or transfer it for collection, as well after as before her marriage. The statute places no inhibition upon this act; on the contrary, it gives her the same authority to deal with the note as if she were unmarried. She did not confer authority upon the plaintiff to sue the defendant; that authority was incident to the plaintiff's legal title to the note, although the equitable interest remained in the wife."

In the case of *George* v. *High,* 85 N. C. 99, the court, after citing several cases where courts of equity had enforced contracts between husband and wife, said: "These cases have not been referred to because they have any direct bearing upon the plaintiff's case, for, being a plain action of assumpsit, hers must depend upon the law as distinguished from equity; but they have been cited because they serve to show the *policy* of the

courts of modern times in regard to this fiction as to the unity of person, and their readiness to dispense with it on account of its tendency oftentimes to defeat real justice and disappoint the most generous intentions of husbands."

Moreover, in the case at bar the pleadings do not disclose that any contention was made that the note was not given for a valuable consideration, the only defense, as stated before, being the coverture of the maker and the original payee.

As this note was the separate property of Mrs. Bronson, and legally assigned by her to appellee, we hold that the affidavit of defense was insufficient in law, and affirm the judgment below, with costs.                                   *Affirmed.*