### ELLIS et al. v. ELLIS (two cases).

(Court of Appeals of District of Columbia. Submitted March 7, 1921. Decided April 3, 1922.)

#### Nos. 3634, 3685.

1. Wills ⚬⇒58(2)—Evidence held to show property was acquired by the ·joint efforts of husband and wife, under agreement it should belong to survivor.

In a suit by a widow to recover property owned by her husband at his death, evidence *held* to show that the property was acquired by the joint efforts of the husband and wife, under an agreement between them that, upon the death of either, it should belong to the survivor.

---

⚬⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Appeal and error** ⟨key⟩**1050(1)—Admission of inventory and appraisal to identify property in controversy held not prejudicial.**

In a suit by a widow to recover her husband's property under an agreement between them that it should belong to the survivor, the admission in evidence on behalf of plaintiff of the inventory and appraisal of the personal estate filed in the probate court, merely to identify the personal estate, in no way prejudiced defendants.

3. **Witnesses** ⟨key⟩**159(12)—Testimony by widow as to work done in connection with joint business does not concern "transaction or contract with deceased person."**

Testimony by a widow as to the work she did in connection with the joint business of herself and husband is not testimony to a "transaction or contract with a deceased person," which would be inadmissible under Code, § 1064.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Transaction.]

Appeal from the Supreme Court of the District of Columbia.

Separate suits by Lucretia Ellis against Abron Ellis and others and against Elmyra Ellis and another, consolidated for trial. Decrees for the plaintiff, and defendants appeal. Affirmed.

Benjamin L. Gaskins and Charles S. Cuney, both of Washington, D. C., for appellants.

Charles S. Shreve and Mason N. Richardson, both of Washington, D. C., for appellee.

ROBB, Associate Justice. These are appeals from decrees in the Supreme Court of the District granting the prayers of appellee's bills, the cases having been consolidated for trial. Appeal No. 3684 involves real estate, and appeal No. 3685. personalty, but both depend upon the same set of facts.

In 1901, according to the averments of the bills and the evidence adduced, the appellee, Lucretia Ellis, was married to James N. Ellis in this city. Ellis then was without means and earning $5 or $6 a week as a cook. Mrs Ellis took in roomers and did washings, and the couple were able to save enough to enable them, in 1909, to move into better quarters at No. 1251 Ninth Street, Northwest, next door to the real estate here involved, where they opened a restaurant which they conducted until about 1914. By that time their business had so prospered that they were able to buy the property next door, or No. 1249 Ninth street, paying $3,000 cash toward the purchase price of $5,500. They continued the restaurant business in the same location until the death of Ellis in November of 1919. At that time the couple not only had paid for the house, but had nearly $6,000 on deposit, and personal property of the value of almost $1,200. Mrs Ellis, during all these years, rented out and cared for all available rooms in the house, collecting and turning over to her husband all the rents. In addition, she had virtual charge of the restaurant and did much of the cooking there. Her hours ranged from 7 o'clock in the morning until very late at night, often until 11 or 12 o'clock. Her husband's health was not good, and

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

he did little more than the marketing. To all outward appearances, therefore, the enterprise was joint, as between this husband and wife.

The family physician, who had been acquainted with Ellis for from 10 to 15 years, and who saw him about once a month during the latter years of his life, testified that upon an occasion when the couple came to his office Ellis stated "that he and his wife were copartners in the business; * * * that if he died first whatever he had he would leave to his wife, would go to his wife; that they were copartners, and that if his wife died whatever she would leave would come to him; * * *" that they were copartners, and at the death of either the other would get the remainder. A witness by the name of Gordan, who was intimately acquainted with Ellis, testified that Ellis stated to him in the presence of Mrs. Ellis:

"What worries me now is that I will break my wife down, because I have been practically no good to her, except to go to market, and I am just some of these days, just going to make my will, and let her know that she is not working for nothing, because she has given me every dollar that we have taken in in our lodging house, and she has never asked me for anything, and she trusts me unboundedly, and she ought to be the recipient of what we have made."

On another occasion, while the witness was at the Ellis restaurant, and Mrs Ellis came in, Ellis said:

"Here is the old war horse; * * * well, she is the old war horse, and she knows who she is doing it for; she is doing it for herself and me."

At another time Ellis stated:

"We got a chance to buy this one (the house in question); then we put all our money together and bought it; that he and his wife had made every dollar of it."

Another witness, by the name of Washington, testified that Ellis, in speaking of the help his wife had been to him, said that when he was married he had practically nothing and—

"lived in a short street; * * * that his wife had done washing and ironing; that she had gone out washing, and that they had saved their money; and that they had bought the property; that some one had suggested to him that they buy it jointly, but that he had not done it, because it might hurt his business, and that he might not be able to get credit, and that it would be hers anyhow; * * * that if she, his wife, was the longest liver, he was going to give her what he had, which would be belonging to her; that she helped me [him] to make it, and I [he] did not have anything when I [he] was married."

The testimony of several other witnesses was to the same effect, and there was no evidence to the contrary. Ellis died without making a will, and the object of this suit was to enforce the agreement under which the property was acquired. The decrees of the trial court were to that effect, and the principal question before us is whether there was sufficient evidence upon which to base those decrees.

[1] That this property was accumulated through the joint efforts of Ellis and his wife is overwhelmingly established. That there was an understanding and agreement that the venture was to be joint, and that Ellis would make a will in favor of his wife, we regard as equally well established. They were uneducated people, and more concerned

with the successful conduct of their business than with legal forms and procedure. Their relations, apparently, were very harmonious, each doing his or her utmost for the common welfare, and we entertain no doubt that the failure of Ellis to execute his promise by making a will is to be attributed to the common frailty of humanity in matters of this sort. In other words, Ellis delayed too long, and his wife was compelled to resort to a court of equity for the protection and preservation of her rights. The decrees in her favor did not charge Ellis upon his parol contract with her, "but rest upon the equities arising out of the acts and conduct of the parties subsequent to the making of the original agreement." Whitney v. Hay, 181 U. S. 77, 89, 21 Sup. Ct. 537, 542 (45 L. Ed. 758).

[2] There was introduced in evidence, on behalf of the appellee, the inventory and appraisal of the personalty filed in the probate court. This was merely to identify the personal estate involved, and in no way prejudiced appellants.

[3] It is further objected that the testimony of Mrs. Ellis as to the work she did was inadmissible under section 1064 of the Code, relating to the testimony of a surviving party. Since the witness did not attempt to testify "to a transaction or contract," her testimony was outside the rule. Tuohy v. Trail, 19 App. D. C. 79.

It results that the decrees must be affirmed, with costs.

Affirmed.