GWINN *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 31. Argued November 9, 10, 1932.—Decided December 5, 1932.

*Messrs. Thomas A. Thacher, Llewellyn A. Luce,* and *Ralph W. Smith* submitted for petitioner.

*Assistant Attorney General Youngquist,* with whom *Solicitor General Thacher* and *Messrs. Sewall Key* and *Erwin N. Griswold* were on the brief, for respondent.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

June —, 1915, J. H. Gwinn, the petitioner here, and his mother, Mrs. M. A. Gwinn, residents of California, acquired by equal contributions certain property, as joint tenants with the right of survivorship, which they continued to hold until her death, October 5, 1924. He is the beneficiary of the estate and in possession of its assets.

The Revenue Act approved June 2, 1924, c. 234, 43 Stat. 253, 304 (U. S. C., Title 26, § 1094) provides—

" SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— . . .

(e) To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than a fair consideration in money or money's worth: . . .

(h) Subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act."

When he appraised the gross estate of Mrs. Gwinn for taxation under the Act of 1924, the Commissioner of In-

ternal Revenue included the value of one-half the property which she and her son had acquired as stated. This was challenged as error. The Board of Tax Appeals upheld the Commissioner and the Circuit Court of Appeals affirmed its order.

The petitioner maintains—

That the word " before " in Subdivision (h), § 302, *supra*, should be construed as referring only to the period between June 2, 1924, and September 8, 1916, when the first of recent Federal estate tax statutes (39 Stat. 777) became effective.

That under the tenancy created in June, 1915, each party acquired immediate joint ownership in the whole property; that his interest therein then became completely vested and no change in title or transfer of interest occurred by reason of the co-tenant's death. No interest ceased or passed at the death. The Commissioner is attempting, arbitrarily, capriciously and in violation of the due process clause of the Fifth Amendment, to tax something created, transferred and vested in the survivor prior to the first (1916) federal estate tax law.

The clear language of the 1924 statute repels the notion that it has no application to joint tenancies created prior to September 8, 1916. *Nichols* v. *Coolidge,* 274 U. S. 531. The contrary view is not aided (as claimed) by *Phillips* v. *Dime Trust & Safe Deposit Co.,* 284 U. S. 160.

*The Estate of Gurnsey* (1918), 177 Cal. 211; 170 Pac. 402, is relied upon to support the postulate that under the laws of California no novel tax can be laid on account of rights accruing to the survivor by an enactment subsequent to the creation of the joint tenancy. There the death occurred · February 9, 1915. Claiming authority under the Act of 1913, the State Controller sought to collect an inheritance tax upon a bank deposit credited to the joint account of the decedent and another in April, 1911. The court declared the transfer to the joint account was

complete and the title to the fund became vested in the joint tenants when the deposit was made. Also, " the rule on the subject is that the question of liability to inheritance taxes must be determined by the law in force at the time the title vests in virtue of the transfer." And, the conclusion was that the law in force in 1911 " did not undertake to impose a tax upon the rights accruing to a surviving joint tenant upon the death of his co-tenant." The claim of the State Controller was accordingly rejected and the fund declared not liable to taxation under the Act of 1913.

This opinion recognizes that some rights accrue " to a surviving joint tenant upon the death of his co-tenant," and the possibility of taxation by reason of this fact. But it apparently affirms that under the rule approved in California liability for such taxation must be determined according to law in force when the co-tenancy is established.

To support its affirmation concerning this rule the court cited only *Hunt* v. *Wicht,* 174 Cal. 205; 162 Pac. 639. That cause grew out of an effort, after the grantor's death in 1913, to impose a tax under the statute of 1911 on account of the absolute transfer made in 1905 of a present title to real property subject only to a life estate. The ruling was that a tax based on that transaction could not be laid by an after-enacted statute. There was no suggestion that the doctrine there accepted could have application if the imposition had relation only to circumstances which would arise in the future. But in no view could the supposed rule limit the power of Congress in respect of federal taxation.

In *Tyler* v. *United States,* 281 U. S. 497, 503, 504, where the question at issue was similar to the one now presented, this Court declared—

" The question here, then, is, not whether there has been, in the strict sense of that word, a ' transfer ' of the

property by the death of the decedent, or a receipt of it by right of succession, but whether the death has brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights. . . .

"At his [the co-tenant's] death, however, and because of it, she [the survivor] for the first time, became entitled to exclusive possession, use and enjoyment; she ceased to hold the property subject to qualifications imposed by the law relating to tenancy by the entirety, and became entitled to hold and enjoy it absolutely as her own; and then, and then only, she acquired the power, not theretofore possessed, of disposing of the property by an exercise of her sole will. Thus the death of one of the parties to the tenancy became the ' generating source ' of important and definite accessions to the property rights of the other. These circumstances, together with the fact, the existence of which the statute requires, that no part of the property originally had belonged to the wife, are sufficient, in our opinion, to make valid the inclusion of the property in the gross estate which forms the primary base for the measurement of the tax."

Although the property here involved was held under a joint tenancy with the right of survivorship created by the 1915 transfer, the rights of the possible survivor were not then irrevocably fixed, since under the state laws the joint estate might have been terminated through voluntary conveyance by either party, through proceedings for partition, by an involuntary alienation under an execution. Calif. Code Civ. Procedure, § 752; *Green* v. *Skinner*, 185 Cal. 435; 197 Pac. 60; *Hilborn* v. *Soale*, 44 Cal. App. 115; 185 Pac. 982. The right to effect these changes in the estate was not terminated until the co-tenant's death. Cessation of this power after enactment of the

Revenue Act of 1924 presented proper occasion for imposition of the tax. The death became the generating source of definite accessions to the survivor's property rights. *Tyler* v. *United States, supra.* See *Saltonstall* v. *Saltonstall,* 276 U. S. 260; *Chase National Bank* v. *United States,* 278 U. S. 327; *Reinecke* v. *Northern Trust Co.,* 278 U. S. 339.

*Nichols* v. *Coolidge,* 274 U. S. 531; *Untermyer* v. *Anderson,* 276 U. S. 440, and *Coolidge* v. *Long,* 282 U. S. 582, are inapplicable. In them the rights of the survivors became finally and definitely fixed before the passage of the act—nothing was added as the result of death.

The judgment below must be

*Affirmed.*