In the Matter of the Estate of ROBERT WEIDEN, Deceased.

Surrogate's Court, Kings County, February 2, 1933.

*Harry M. Peyser*, for State Tax Commission.

*Benjamin Greenspan*, for the executors.

WINGATE, S. The present proceeding involves the same questions which were decided by this court in its former opinion in this case (144 Misc. 854). They concern the taxability under the New York Estate Tax Law of tenancies by the entirety created prior to the year 1916 of realty located in this State. The former proceeding was an appeal by the executors from the *pro forma* taxing order based on an appraiser's report which included this real property

in the gross estate. After a somewhat extended consideration of the subject, this court then decided that the contention of the estate was sound, namely, that the taxation of this property was in violation of the State and Federal Constitutions. The matter was remitted to the appraiser for elimination of the objectionable items from the calculation of the gross estate. He has acted as directed, a new *pro forma* order has been entered upon his report, and the State Tax Commission has brought this appeal therefrom as a prerequisite preliminary to a review by higher tribunals of the conclusion of this court that such property is not properly taxable.

The extended examination of the pertinent legal principles which was made in the former decision renders it presently unnecessary to retrace the ground then covered. Suffice it to say in this regard, that reflection in the interval has but served to confirm the court in its conviction of the correctness of its prior result. In one respect only have subsequent events caused a modification of the views previously expressed. At page 855 of the former opinion the court noted its then existing belief that substantially the same question was at that time pending before the United States Supreme Court in the case of *Third National Bank & Trust Company* v. *White.* In the interval the court has been enabled to familiarize itself more fully with the issues involved in that litigation, with the result that it is satisfied that the problems presented in the *Third National Bank* case are not even approximately similar to those involved in the case at bar. Since, however, the State Tax Commission has on this appeal stressed the alleged authority of that case in the decision of the present, it will be of advantage to consider the features which, in the opinion of the court, wholly differentiate it from the present.

The statement of the pertinent facts in the *Third National Bank* case, as set forth in the brief of the respondent before the United States Supreme Court, indicates that decedent and his wife, residents of Massachusetts, transferred certain personal property, belonging wholly to the decedent, to a trustee, which issued a certificate therefor " to the decedent and his wife ' and the survivor of them, husband and wife, tenants by the entirety.' " The commissioner assessed a tax upon the decedent's estate, including this certificate in the gross assets. This tax was paid under protest. An action was thereafter instituted for recovery of the tax assessed in respect to this property. The District Court quite reluctantly sustained a demurrer to the declaration (45 F. [2d] 911). This was affirmed without opinion by the Circuit Court of Appeals (58 F. [2d] 1085), and was affirmed on December 19, 1932, by the United States Supreme Court (53 Sup. Ct. Rep. 290), the *per curiam*

opinion reading: " Judgment affirmed. *Tyler* v. *U. S.*, 281 U. S. 497, 504, 505; *Gwinn* v. *Commissioner*, 287 U. S. 224."

A proper understanding of the result thus attained requires an examination both of the *Tyler* and the *Gwinn* cases, cited in the memorandum, and of the laws of the State of Massachusetts relating to the subject of the species of holding of property which, under the system of jurisprudence there in vogue, is denominated a " tenancy by the entirety."

Certain aspects of the *Tyler* case were considered at pages 869 and 870 of the former opinion in this case. Whereas that analysis renders it entirely apparent that the only portions of the language of the United States Supreme Court therein which possess any semblance of relevancy to the present discussion were little, if any, more than dicta in that decision, it is obvious from the manner of their treatment in the *Gwinn* and *Third National Bank* cases that the court itself has elevated them to the dignity of statements of law. The phraseology in question which is quoted *in extenso* in the *Gwinn* case (which will be considered later), and is incorporated by page reference into the *Third National Bank* opinion, read as follows (281 U. S. 497, 503, 504): " The question here, then, is, not whether there has been, in the strict sense of the word, a ' transfer ' of the property by the death of the decedent, or a receipt of it by right of succession, but whether the death has brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights * * *

" At his [the co-tenant's] death, however, and because of it, she, [the survivor] for the first time, became entitled to exclusive possession, use and enjoyment; she ceased to hold the property subject to qualifications imposed by the law relating to tenancy by the entirety, and became entitled to hold and enjoy it absolutely as her own; and then, and then only, she acquired the power, not theretofore possessed, of disposing of the property by an exercise of her sole will. Thus the death of one of the parties to the tenancy became the ' generating source ' of important and definite accessions to the property rights of the other. These circumstances, together with the fact, the existence of which the statute requires, that no part of the property originally had belonged to the wife, are sufficient, in our opinion, to make valid the inclusion of the property in the gross estate which forms the primary base for the measurement of the tax."

If this language be analyzed, it is apparent that the court deemed

it necessary, in order to make a transfer on death of jointly owned property subject to tax, that there should have resulted from the death an increase in the property rights of the survivor. Three phrases are used in this connection, the first two being joined in a single clause. These are that such new rights shall have been (1) " brought into being," (2) " ripened," and (3) that the death shall have been their " generating source."

The first and third are substantial equivalents of each other and enunciate merely the time-honored principle, fully considered at page 857 of the former opinion in this case, that where there is an invoking of the aid of the sovereign for the purpose of transferring title at death from the dead to the living, an impost may be placed upon such privilege. In other words, that where the death has caused new rights, not theretofore existing, to vest in the survivor, the sovereign may impose a condition on such vesting in the form of a tax upon the privilege then, for the first time, accorded.

The connotation of the second word, " ripened," if it is not to be controlled by the principle of *noscitur a sociis*, is much broader and might include every estate no matter how fully and completely created at any time prior to the death, which did not take effect in full possessory enjoyment until such decease took place. It would include not merely legal estates but equitable ones such as remainders similar to those in *Coolidge* v. *Long* (282 U. S. 582) and *Nichols* v. *Coolidge* (274 id. 531), and the like cases reviewed at length at pages 861 *et seq.* of the former opinion in this case. In all such cases the right to future enjoyment, whether vested or contingent, would be " ripened " into actual possession at the death. The Supreme Court, however, has expressly held in *Knowlton* v. *Moore* (178 U. S. 41, 56) and *Coolidge* v. *Long* (282 id. 582) that the death of the life tenant was not " a generating source of any right in the remaindermen " (See page 863 of the former opinion in this case), and that, therefore, any taxation of such remainder interest would involve an infringement of constitutional guaranties.

Did the United States Supreme Court by the mere inclusion of this word " ripened " in the *Tyler* dictum intend to overrule the unbroken line of its own decisions which have held that no statute can be sustained which, to the slightest degree, impairs a vested right, whether presently possessed or to be enjoyed in future?

Only two views are possible: either the court intended to do this or else the word " ripened " was merely another example of the somewhat inept phraseology which frequently slips into statements which are essentially dicta, and was intended to express nothing more than the familiar thought of death as the " generating source."

That the latter is the correct interpretation to be placed upon it

seems obvious from its flat statements at pages 599 and 600 of *Coolidge* v. *Long:* " No Act of Congress has been held by this court to impose a tax upon possession and enjoyment, the right to which had fully vested prior to the enactment," and " this court has not sustained any state law imposing an excise upon mere entry into possession and enjoyment of property, where the right to such possession and enjoyment upon the happening of a specified event had fully vested before the enactment."

This conclusion is further emphasized by a consideration of the opinion in *Gwinn* v. *Commissioner* (53 Sup. Ct. Rep. 157) which is cited with the *Tyler* case in the *Third National Bank* memorandum.

This was decided on December 5, 1932, and concerned the propriety of taxation of a California joint tenancy with right of survivorship, created prior to the effective date of the Federal taxing act.

The court, after citing the portions of the *Tyler* opinion hereinbefore quoted, said (at p. 158): " Although the property here involved was held under a joint tenancy with the right of survivorship created by the 1915 transfer, the rights of the possible survivor were not then irrevocably fixed since under the state laws the joint estate might have been terminated through voluntary conveyance by either party, through proceedings for partition, by an involuntary alienation under an execution. Cal. Code Civ. Procedure, Sec. 752; *Green* v. *Skinner,* 185 Cal. 435; *Hilborn* v. *Soale,* 44 Cal. App. 115. The right to effect these changes in the estate was not terminated until the co-tenant's death. Cessation of this power after enactment of the Revenue Act of 1924 presented proper occasion for imposition of the tax. *The death became the generating source of definite accessions to the survivor's property rights. Tyler* v. *United States, supra.* See *Saltonstall* v. *Saltonstall,* 276 U. S. 260; *Chase National Bank* v. *United States,* 278 U. S. 327; *Reinecke* v. *Northern Trust Co.,* 278 U. S. 339.

" *Nichols* v. *Coolidge,* 274 U. S. 531; *Untermeyer* v. *Anderson,* 276 U. S. 440 *and Coolidge* v. *Long,* 282 U. S. 582, *are inapplicable. In them the rights of the survivors became finally and definitely fixed before the passage of the act — nothing was added as the result of death.*" (Italics not in original.)

This opinion is of interest for three reasons, *first,* because it definitely returns to the sound and familiar phraseology of the necessity of death constituting " the generating source " of the rights of the survivor; *second,* since it reaffirms the authority of *Nichols* v. *Coolidge* and *Coolidge* v. *Long,* which must be relegated

to the scrap heap if a mere " ripening " of rights would suffice· as a basis for tax; and finally, for the reason that it indirectly reaffirms the position that where " the rights of the survivors became finally and definitely fixed before the passage of the act " they are not subject to diminution by subsequent taxation.

Having determined, therefore, that the *Tyler* case has established no rule differing from the time-honored one that to be subject to subsequent tax laws the *rights* of the survivor as distinguished from his possessory enjoyment must, in part at least, have come into being by reason of the death and not have existed prior to the enactment, the next step in the examination of the subject concerns the application of that principle in the *Gwinn* and *Third National Bank* cases, and the relation, if any, of these decisions to the facts of the case at bar.

Obviously a determination of whether or not death was the generating cause of any rights in a survivor in a given case depends on the rights which vested in the survivor at the time of the original conveyance and is essentially a question of fact.

It must of course be obvious at a glance that the *Gwinn* case is utterly valueless as a precedent for the decision of the case at bar. On the California authorities cited by the Supreme Court, " the rights of the possible survivor were not irrevocably fixed " by the original transfer, under the joint tenancy there created, but were capable of divestment during the lifetime of the one first to die in any one of the three modes specified, whereas under the tenancy by the entirety, here involved, the authoritative determinations of the New York courts reviewed in the former opinion in this case definitely establish that such a result is impossible. A New York tenancy by the entirety cannot be terminated in any one of the modes cited as possible in the California joint tenancy, namely, by *first,* a voluntary conveyance by either party (*Matter of Klatzl,* 216 N. Y. 83, 88); *second,* proceedings for partition (*Hiles* v. *Fisher,* 144 N. Y. 306); or, *third,* by an involuntary alienation under an execution (*Jackson* v. *McConnell,* 19 Wend. 175, 178).

Obviously, therefore, the California joint tenancy differs from a New York tenancy by the entirety not only in name but in the essential characteristics that in the former the death of the first to die actually creates certain rights in the survivor which did not previously exist, whereas in the latter, such is not the fact, these rights having existed from the moment of the original conveyance and coming only into possessory enjoyment by reason of the happening of the specified contingency of death. The *Gwinn* decision is, therefore, patently irrelevant to the present consideration.

In approaching an analysis of the Massachusetts law respecting

the conception existing in that State of tenancies by the entirety, which lies at the base of the decision in the *Third National Bank* case, one is impressed at once by the fact that the " tenancy by the entirety," which was there the subject of litigation, was one in personal property. This fact renders it obvious that in certain respects, at least, the nomenclature in that Commonwealth covers a different conception from that entertained in New York when this phrase is used, since here tenancies by the entirety cannot be created in personal property. (*Matter of Albrecht*, 136 N. Y. 91, 94; *Matter of McKelway*, 221 id. 15, 18; *Matter of Blumenthal*, 236 id. 448, 453.) The New York rule in this respect is directly contrary to the determinations of the Massachusetts courts where tenancies by the entirety in personalty have frequently been held to exist. (*Phelps* v. *Simons*, 159 Mass. 415, 419; *Boland* v. *McKowen*, 189 id. 563, 565; *Woodard* v. *Woodard*, 216 id. 1, 3; *Marble* v. *Treasurer & Receiver General*, 245 id. 504, 507.)

Whereas this difference might be deemed superficial, the decisions of the Massachusetts courts demonstrate that the respective rights of the spouses in property held under their conception of a tenancy by the entirety differ most radically from those existing in this State. In *Bernatavicius* v. *Bernatavicius* (259 Mass. 486) the court says (at p. 487): " The characteristics of a tenancy by the entirety at common law continue unaffected by the modern statutes designed to ameliorate the rights of married women at common law and to render more flexible and individual the property rights of husband and wife."

The results of this rule in Massachusetts as effecting wide and substantial differences in the rights of the parties from those prevailing in New York are manifest from an examination of the decisions in that State, which show that the interest of a wife in property held under their conception of a tenancy by the entirety is distinctly subordinate to that of her husband.

In *Phelps* v. *Simons* (159 Mass. 415) it appeared that a husband and wife were tenants by the entirety of a certificate of stock which had been given them by will. Although the certificate itself was in the possession of the wife, the husband undertook to sell it by executing a deed of sale. The court held (at p. 418) that the husband's vendee was entitled to all the dividends during the joint lives of the husband and wife, and would be entitled to the stock itself should the husband survive the wife. Only if the wife survived the husband would the vendee's right be defeated. It thus appears that the husband alone has the sole right to dispose of the income from personal property held by the entirety. The interest of the Massachusetts wife is thus distinctly less than that of the

wife in New York, where the income from property held by the entirety belongs to both husband and wife in equal shares. (*Matter of Goodrich* v. *Village of Otego*, 160 App. Div. 349, 353; *Hiles* v. *Fisher*, 144 N. Y. 306, 315, 316.)

Several Massachusetts cases have applied a similar rule and have held that the wife has no right to the possession of property held by the entirety during the life of her husband. (See *Pray* v. *Stebbins*, 141 Mass. 219, 223, 224; *Voight* v. *Voight*, 252 id. 582, 583; *Cunningham* v. *Ganley*, 267 id. 375, 377; *Peter* v. *Sacker*, 271 id. 383, 385.) In New York, on the other hand, her right to possession during the continuance of both lives is in all respects equal to that of her husband. (*Grosser* v. *City of Rochester*, 148 N. Y. 235, 238; *Matter of Goodrich* v. *Village of Otego*, 160 App. Div. 349, 353.)

The Massachusetts decisions concerning the rights of creditors of the husband and wife emphasize still further the wife's inferior position in the tenancy. In *Raptes* v. *Pappas* (259 Mass. 37, 38) it was held that a judgment creditor of the husband receives an immediate right to possession of the property held by the husband and wife as tenants by the entirety and also a remainder in fee in case the husband survives the wife. In New York the rights of the wife in such a contingency remain unaffected. (*Hiles* v. *Fisher*, 144 N. Y. 306, 316; *Bartkowaik* v. *Sampson*, 73 Misc. 446, 450.)

In sharp contrast with this right of a Massachusetts creditor of the husband is the treatment accorded such a creditor of the wife. In *Licker* v. *Gluskin* (265 Mass. 403) it was held that a judgment creditor of the wife cannot attach her interest or sell it during the joint lives of the husband and wife. The basis of the court's decision was (at p. 407) that since the common-law rule applies to tenants by the entirety, the sole deed of the wife is absolutely void. Since the wife can make no conveyance of the property, her creditor cannot do that which she cannot do. In reaching this decision, the court in substance held that the interest of the wife in a tenancy by the entirety is nothing more than an expectancy, saying (at p. 406): " Seemingly there is force in the contention that the interest of the wife in an estate held by her husband and herself as tenants by the entirety is in the nature at least of a potential title and constitutes a possibility of acquisition of complete possession coupled with the absolute title, and hence may be conveyed by her and attached by her creditors. But we are of the opinion that this principle is not applicable to the wife in an estate by the entirety. Without undertaking to define further the characteristics of an estate by the entirety, its nature is such that the

principle just stated does not govern the power of the wife touching her interest therein."

The foregoing citations would seem amply to justify the summary of the law as given in the brief for the government in the *Third National Bank* case: " in Massachusetts where property is held by husband and wife as tenants by the entirety, the husband is entitled to the exclusive use and possession of the property during coverture, and the wife has no rights whatever with respect to its present enjoyment. As a consequence of this rule it is held that the entire interest in the property, subject to the possibility of the wife's survivorship, may be disposed of by the husband, and may be taken on execution against him by a judgment creditor. On the other hand, the wife has no right to dispose of the property or to deal with it in any way, and accordingly her judgment creditor takes nothing. From this it is plain that a husband who transfers property to himself and his wife as tenants by the entirety in reality parts with no substantial interest in the property, and his wife obtains little more than an expectancy — no present interest and only a contingent right of survivorship."

The result in New York, on the other hand, was stated by this court at page 861 of its former opinion as follows: " The composite result of these controlling authorities is to demonstrate that in the State of New York a conveyance of land to husband and wife as tenants by the entirety does two things, namely:

" (1) It vests absolutely in each spouse a legal life estate in the property in question in common with the other spouse, and (2) it vests in each spouse a remainder in the whole property subject to be divested by his or her death prior to the death of the other. Both of these vested estates inhere in both parties from the moment of the conveyance ' by virtue of the grant ' contained therein."

This review makes it entirely obvious that the phrase " tenancy by the entirety " means something entirely different in Massachusetts from that which the same words connote in New York, with the result that the determination by the United States Supreme Court in the *Third National Bank* case that the death of the spouse first to die in such a tenancy in Massachusetts is a " generating source " of new rights, not previously vested in the survivor, has no application whatsoever in a decision of whether or not such is the fact under the diverse legal situation arising from a tenancy in New York which, while bearing the same name, is in fact radically different.

The existence of such a potential difference with resulting diverse determination is clearly envisaged in the brief of the government in the *Third National Bank* case, which (at p. 22) closes its discussion

of the characteristics of a Massachusetts " tenancy by the entirety " with these pregnant words: " Even if property held by the entirety in some states could not constitutionally be included in the measure of the estate tax, where the tenancy was created prior to 1916, we submit that the interest of the wife in a Massachusetts tenancy by the entirety is so unsubstantial that property held by the entirety in that State may be taxed as part of the husband's estate regardless of when the tenancy was created."

Since it is apparent that there is no decision of the United States Supreme Court which, even by a strained construction, can be deemed to have passed upon the question at bar, the court is under obligation to apply basic principles in its determination. Certain of these principles were fully considered in the former opinion in this case, and these are expressly reaffirmed. Others may perhaps be worthy of somewhat more extended development.

In *United States* v. *Fox* (94 U. S. 315) the Supreme Court used the following language (at p. 320): " The power of the State to regulate the tenure of real property within her limits, and the modes of its acquisition and transfer, and the rules of its descent, and the extent to which a testamentary disposition of it may be exercised by its owners, is undoubted. It is an established principle of law, everywhere recognized, arising from the necessity of the case, that the disposition of immovable property, whether by deed, descent, or any other mode, is exclusively subject to the government within whose jurisdiction the property is situated  *  *  *. The power of the State in this respect follows from her sovereignty within her limits, as to all matters over which jurisdiction has not been expressly or by necessary implication transferred to the Federal government. The title and modes of disposition of real property within the State, whether *inter vivos* or testamentary, are not matters placed under the control of Federal authority. Such control would be foreign to the purposes for which the Federal government was created, and would seriously embarrass the landed interests of the State."

The same thought is further developed in *Warburton* v. *White* (176 U. S. 484, at p. 496): " Where state decisions have interpreted state laws governing real property or controlling relations which are essentially of a domestic and state nature; in other words, where the state decisions establish a rule of property, this court when called upon to interpret the state law will, if it is possible to do so, in the discharge of its duty, adopt and follow the settled rule of construction affixed by the state court of last resort to the statutes of the State, and thus conform to the rule of property within the State. It is undoubted that this rule obtains, even although

the decisions of the state court, from which the rule of property arises, may have been for the first time announced subsequent to the period when a particular contract was entered into."

Even *Tyler* v. *United States* (281 U. S. 497), upon which the whole thesis of the State Tax Commission is based, after reviewing certain State decisions respecting the nature of tenancies by the entirety under the decisions of Maryland and Pennsylvania, says (at p. 501): " These decisions establish a state rule of property, by which, of course, this court is bound." (See, also, *Sunderland* v. *U. S.*, 266 U. S. 226, 232.)

These authorities establish beyond peradventure that the decisions of New York courts respecting the nature of a tenancy by the entirety in this State and the rights created thereby are binding upon the United States Supreme Court in like manner and to like extent that they are binding upon this court.

The effect of these decisions has been stated both at page 861 of the former opinion and herein. Under New York law the conveyance to husband and wife as such vests in each spouse from the moment of the grant a tenancy in common in the property conveyed, with an absolute remainder, which is subject to divestment on predecease, in the whole. This has repeatedly been affirmed by all of the courts of this State.

Such being the law of the State and having been so at the time of the conveyance of the property here in question to the decedent and his wife, it was incorporated into the conveyances of this property with precisely the same effect as if the legal effect, so declared, had been recited in the conveyances at length.

In *McCracken* v. *Hayward* (43 U. S. [2 How.] 608) the court says (at p. 612): " The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made; these are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to perform them by the one party, and the right acquired by the other."

Again (at p. 613): " These laws giving these rights were as perfectly binding on the defendant, and as much a part of the contract, as if they had been set forth in its stipulations in the very words of the law relating to judgments and executions."

The same principle is noted in *Edwards* v. *Kearzey* (96 U. S. 595, at p. 601): " It is also the settled doctrine of this court, that the laws which subsist at the time and place of making a contract enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This rule embraces alike those which affect its validity, construction, discharge, and enforcement."

The same principle has been frequently applied in this State. (*People ex rel. City of New York* v. *Nixon*, 229 N. Y. 356, 361.)

The result of this principle is that in legal effect the conveyances in this case at the time of their delivery in 1893, 1895, 1903 and 1908, read that the grantors conveyed the respective properties to the decedent and his wife as tenants in common during the continuance of their joint lives and further granted to each a complete fee in the respective parcels to take effect in possession on the death of the tenant in common subject to divestment in the event of the predecease by such grantee of the other. Such conveyance of the fee, though to take effect in the future and subject only to " an event which must inevitably happen by the efflux of time " and which " nothing but his failure to survive \* \* \* could prevent " (*Coolidge* v. *Long*, 282 U. S. 582, 598), effected a completed transfer (See authorities pages 861–867 of the former opinion in this case) which was not subject to impairment or diminution in value to the slightest extent. (*Planters' Bank* v. *Sharp*, 6 How. [U. S.] 301, 327.) The imposition of a death tax thereon would effect such impairment, wherefore the statute imposing such a tax is unconstitutional.

The final argument of the State Tax Commission in favor of uniformity of interpretation of the State and Federal statutes can be dismissed in a word. There has been no authoritative Federal interpretation of their statute to the effect that a New York tenancy by the entirety created prior to 1916 is taxable. Since the unconstitutional nature of such a tax appears most obvious, it is to be presumed that when the question is finally presented to the United States Supreme Court for determination, it will so decide. Were this court, therefore, to hold the similar State enactment valid in spite of the stultification of its intelligence which such an act would involve, and were the higher courts of this State to affirm such determination, which is inconceivable, the ultimate result would be not a promotion of uniformity of interpretation of the two laws, but the reverse.

The appeal of the State Tax Commission must, therefore, be dismissed.

Proceed accordingly.