AMY S. RICHARDSON, EXECUTRIX OF THE ESTATE OF CHARLES W. RICHARDSON, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64023. Promulgated October 3, 1934.

*C. H. Merillat, Esq.*, for the petitioner.
*Lewis S. Pendleton, Esq.*, for the respondent.

248

MURDOCK: The evidence does not show that the Commissioner erred in valuing the property at 1337 Connecticut Avenue and the 500 shares of stock of the Union Trust Co. On the contrary there is evidence supporting his valuations. No question was raised as to the value of the Duxbury property. The value placed by the

Commissioner upon the residential property at Grant Road was too high and a lower value, based upon the evidence in the record, has been found. This property had an area of 21.14 acres, whereas the witnesses at times had in mind only 17.691 acres. Due allowance has been made for this difference.

The only remaining question is to determine what part of the value of each of the three pieces of real estate should be included in determining the value of the gross estate of the decedent. Section 302 of the Revenue Act of 1926 is in part as follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death;

\* \* \* \* \* \* \*

(e) To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, \* \* \* except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: *Provided,* That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person \* \* \*.

\* \* \* \* \* \* \*

(h) Except as otherwise specifically provided therein subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act.

All of the property in question, with the exception of a certain part of the Grant Road property, was held by the decedent and his wife at the time of his death either as joint tenants or as tenants by the entirety. Code of District of Columbia, sec. 1031; *Loughran* v. *Lemmon,* 19 App. D.C. 141; *Settle* v. *Settle,* 56 App. D.C. 50; 8 Fed. (2d) 911. The wife never owned any of the property separately from her husband. Cf. *Rita O'Shaughnessy, Executrix,* 21 B.T.A. 1046; affd., 60 Fed. (2d) 235; certiorari denied, 288 U.S. 605; *Estate* of *Edward T. Kelley,* 22 B.T.A. 421. However, she acquired a joint legal interest in some of the property from her husband and she acquired a legal interest in some of the property jointly with him at the same time that he acquired his interest. Therefore if any of the property is to be excluded in computing the value of the gross estate of the decedent it must appear either that the wife furnished some certain proportionate part of the considera-

tion with which a piece of property was purchased or that she acquired an interest in certain property from the decedent by paying him full and adequate consideration in money or money's worth for what she received. *Phillips* v. *Dime Trust & Safe Deposit Co.*, 284 U.S. 160; *Walter J. Reese, Executor*, 25 B.T.A. 38; *Herbert D. Robinson, Executor*, 21 B.T.A. 1373; affd., 63 Fed. (2d) 652; *Marmaduke B. Morton, Administrator*, 23 B.T.A. 236; *City Bank Farmers Trust Co., Executor*, 23 B.T.A. 663; Regulations 70, art. 23. Cf. *J. H. Gwinn*, 20 B.T.A. 1052; affd., 54 Fed. (2d) 728; 287 U.S. 224. Neither appears with sufficient clarity to justify a finding which would benefit the petitioner.

The record fails to show that any money belonging to the wife ever was used to purchase any of the properties in question. She testified that she gave the decedent $600 or $700 when they were married which was put into property. They were married in 1889, they purchased many properties, and it is impossible to trace or even begin to trace this first contribution which she made. Certainly it can not be traced into any of the properties in question. Next she testified in regard to an interest in a trust established by her father from which she received money. However, the record does not show the date when any distribution was made from this trust or the amount of any distribution received by her, except that she received $7,669.46 in 1925. All of the property in question with the exception of lot 801 was purchased prior to this distribution. There is no showing of how lot 801 was purchased, whose money was used, or how much was paid. The only evidence of a payment on account of the purchase price of any of the property having been made after the above mentioned distribution relates to a payment of $5,023.33 on the mortgage on the Duxbury property. The $7,669.46 belonging to the wife was deposited in the husband's bank account on July 30, 1925, increasing the balance in that account from $11,827.97 to $19,795.65. A check was drawn on August 1, for a purpose not shown, which reduced the balance to $6,681.82. Thereafter a few small deposits were made and on August 7 a check for $5,023.33 was drawn in payment of notes given in 1923 to purchase the Duxbury property. The cost of that property has not been shown. How much of the wife's money went to pay the notes, how much of it was used to pay the check dated August 1, and how much of it was left in the account? Even if these questions could be answered satisfactorily, still the proportion of the consideration represented by the wife's payment could not be determined because the cost of the property has not been shown. Hence the portion of the value to be excluded could not be determined.

The wife also testified that she saved $200 per month out of an allowance of $100 per week given her by her husband for household expenses. We need not decide whether or not this represented a gift from the husband or whether or not there was full and adequate consideration in money or money's worth to meet the requirements of the statute. None of this money has been traced into any of the properties in question and of course no certain amount has been traced into any particular property, as would be necessary if a change were to be made in the determination of the Commissioner.

The wife said that she managed all of the decedent's business affairs, yet she has not mentioned one instance of the contribution of any of her own separate money toward the purchase of a particular piece of property nor has she stated the amount of any contribution by her toward the purchase of any particular property. Counsel for the petitioner alleged in the petition that there existed between the decedent and his wife " a community of interests and property " to which the wife made contributions of her services. He argues that under this agreement the wife was entitled to all of the jointly owned property upon the death of the husband. Apparently counsel relies upon proof of this alleged agreement in lieu of evidence tracing definite amounts of the wife's money into particular properties. The value of the services rendered by the wife has not been shown. There is no community property law in the District of Columbia, where this couple lived, to correspond with that of Texas and other community property states. If there were, no agreement would be necessary. The testimony of the wife does not adequately support the view of counsel for the petitioner. She testified that with respect to properties purchased with the funds of both " the arrangement was, if I should die, it was all his; if he should die, it was all mine " and their wills were made to carry out that arrangement. They held most of the property in question either as joint tenants or as tenants by the entirety and consequently all so held would go to the survivor. The wife was the sole beneficiary under the husband's will. Thus the arrangement testified to by the wife is really immaterial in the decision of the case for it does not change the facts as otherwise established. The evidence does not show any further arrangement or agreement between the husband and wife in regard to any of the properties here involved. Thus it is unnecessary to consider the possible effect of any such agreement as was alleged to exist.

The value of the property standing in the name of the decedent alone must be included in determining the value of the decedent's gross estate. Likewise the entire value of the property standing

in the name of the decedent and his wife either as joint tenants or as tenants by the entirety must be included in determining the value of the decedent's gross estate, since her separate contribution, if any, toward the purchase of those properties has not been shown, and consequently the proportionate part of the value to be excluded can not be determined. *Tyler* v. *United States*, 281 U.S. 497; *Third National Bank & Trust Co. of Springfield* v. *White*, 45 Fed. (2d) 911; aff'd., 58 Fed. (2d) 1085; affirmed *per curiam*, 287 U.S. 577, on authority of *Tyler* v. *United States, supra*, and *Gwinn* v. *Commissioner*, 287 U.S. 224; *Putnam* v. *Burnet*, 63 Fed. (2d) 456; *Levy's Estate* v. *Commissioner*, 65 Fed. (2d) 412; *Luman W. Goodenough, Executor*, 30 B.T.A. 69; *Henry M. Butzel, Executor*, 21 B.T.A. 188; *American Security & Trust Co. et al., Executors*, 24 B.T.A. 334, 340.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

VAN FOSSAN, dissenting: I find myself unable to subscribe to the holding of the majority of the Board. I believe the evidence in this case fully spells out a contract between the decedent and his wife which existed throughout all of their married life and was basic in all property accumulations. If such a contract existed, it should be given effect. I cannot subscribe to the narrow view that the exact money contribution of the wife must be traced through each change in property, however obvious it may be that there is merit in the petitioner's primary contention. I believe the powers and the duty of the Board are broader than the prevailing opinion would indicate.

As above suggested, the basic issue involved in the case at bar is whether or not a business contract existed between the decedent, Richardson, and his wife. The evidence shows clearly that such a contract was entered into in 1899 and continued until August 15, 1929, the date of the decedent's death.

All available funds arising from the joint efforts of the parties were invested in real and personal property. To such proceeds were added the petitioner's distributive share of her father's estate. In the management of those assets, a strictly business activity, the wife took a major and dominant part. Under the terms of the original agreement the decedent and his wife were to share equally in the results of their endeavors and the consequent profits therefrom.

In the District of Columbia a husband and wife may enter into contracts with each other, *Bronson B. Brady*, 28 App. D.C. 250; *Ellis* v. *Ellis*, 51 App. D.C. 383; 280 Fed. 457; and in event of such a relationship the court will enforce the same as to the respective rights of the parties. *Ellis* v. *Ellis, supra.*

Since the existence of the contract has been established, it is immaterial in whose name the property was held or the enterprise was conducted. *John T. Newell*, 17 B.T.A. 93; *Leonard M. Gunderson*, 23 B.T.A. 45; *J. Kammerdiner*, 25 B.T.A. 495. As a matter of fact, however, substantially all of the realty in question was held jointly.

The proof establishes that the three properties in controversy, the Connecticut Avenue, the Grant Road, and the Duxbury, were acquired and held pursuant to the contract between the parties. In my opinion but one half of the value of each property should be included in the taxable estate.