**SHEETS et al. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 10999.**

Circuit Court of Appeals, Eighth Circuit.

March 30, 1938.

Abbott L. Fletcher, of Minneapolis, Minn., for petitioners.

Helen R. Carloss, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before STONE, GARDNER, and WOODROUGH, Circuit Judges.

WOODROUGH, Circuit Judge.

This petition for review involves a deficiency of $2,439.11 in federal estate taxes imposed under the Revenue Acts of 1926 and

1932, 44 Stat. 9, 47 Stat. 169, and is taken from the decision of the Board of Tax Appeals, reported 35 B.T.A. 220. The facts were found by the Board as follows:

### Findings of Fact.

The petitioners are the duly qualified executors of the estate of Leveret T. Sheets, who died testate June 9, 1932, a resident of Minneapolis, Minn.

In October, 1928, Pauline L. Sheets, wife of the decedent, filed a suit for divorce from her husband, alleging cruel and inhuman treatment, and inadequate support. As relief, she asked for an absolute divorce, custody of their two small children, alimony equal to one-third of his property, a reasonable monthly or quarterly allowance for the support of herself and her children, costs of the suit, that the alimony allowed her be paid in cash or by a division of property, that the defendant be enjoined from disposing of his property until final judgment of the court, and that a receiver be appointed of all the property of the defendant with authority to carry out the decree of the court.

The defendant was ordered to show cause on November 8, 1928, or as soon thereafter as counsel could be heard, why certain relief should not be granted the plaintiff.

After protracted negotiations, the parties agreed upon a settlement of the property rights, including alimony, involved in the suit, and the dower interest of the plaintiff in the defendant's property. The settlement agreement, entered into on November 2, 1928, contains an agreement of the parties that the estate of the defendant, consisting almost entirely of notes secured by mortgages on real property, and bonds, as disclosed by a list attached to the document, had a value of approximately $152,270.47, exclusive of the homestead, and provides for a payment of $250 per month to the plaintiff for household expenses and clothing for herself and her children. The agreement sets forth that the defendant had paid the plaintiff the sum of $1,000 in cash and contains his agreement to pay all outstanding bills of the family and a note of the plaintiff in the sum of $225. Other provisions of the agreement follow:

The defendant has conveyed and assigned to a third party bonds and mortgages in the sum of $50,756.82, which in turn have been assigned to the plaintiff and defendant as joint tenants and not tenants in common, to the end that upon the death of either of the parties the ownership of said bonds and mortgages shall be and become the property of the survivor without probate or other proceedings.

It is mutually agreed that during the lifetime of the defendant he shall have the income from the said bonds and mortgages as his own, except as hereinafter stipulated.

It is further understood and agreed that as to said bonds and mortgages the defendant shall have no right to assign, satisfy, extend, or otherwise dispose of said bonds or mortgages without the consent of the plaintiff in writing joining thereto. * * *

In the event that defendant fails to pay to plaintiff said $250 per month, the entire income from the one-third of said estate held jointly and the increase thereon shall become the property of the plaintiff and plaintiff shall be released from paying the usual household expenses but not her own personal expenses. * * *

It is further understood and agreed that this stipulation disposes of the entire estate of the defendant and the plaintiff releases and forever discharges the defendant, his heirs, administrators, executors, and assigns from any and all claims or demands, either as dower or otherwise to any of the estate of the defendant contained in the list hereto attached or that may be hereafter acquired, now or after his death, except the title to one-third thereof hereinbefore provided and conveyed to her, and except one-third of the property, if any, now owned by defendant and not included in said list. * * *

It is further stipulated that the plaintiff shall return to the home of the plaintiff and defendant immediately and that the parties hereto shall again take up the relations of husband and wife as heretofore and each shall diligently try to avoid any complications that would tend to again cause unhappy differences between them, and the plaintiff agrees that the time to answer in the above proceedings shall be and hereby is extended to December 1, 1928, and it is specifically provided that the terms of this stipulation and agreement shall be and are binding upon each of the parties hereto, whether or not the said proceedings are dismissed or proceed to trial and judgment therein.

The securities held by the decedent and Pauline L. Sheets, as joint tenants, were itemized in the estate tax return, but the value thereof was not included in the gross estate on the ground that the property was acquired by the surviving cotenant for an

adequate and full consideration. The respondent determined a value for the property, and included the amount thereof, plus accrued interest in the amount of $787.34, in the gross estate.

The petitioners are not contesting the value determined by the respondent for some of the securities. The remaining securities had the following values at the time of decedent's death (values itemized):

## Opinion.

Upon the facts so found the Board decided that the full value of the property in question constituted a part of the gross estate and that there was deficiency in the estate tax on account thereof. The executors of the estate contend in support of their petition for review:

(1) That the property in question was not held in joint tenancy; (2) that this court should determine that Pauline L. Sheets acquired the property for an adequate and full consideration in money's worth, notwithstanding the amendatory provisions of section 804 of the Revenue Act of 1932, 26 U.S.C.A. § 412; and (3) that it would be violative of the Fifth Amendment to apply that section to the transaction here involved.

(1) We agree with the unanimous decision of the Board of Tax Appeals that the property was held in joint tenancy within the meaning of section 302 (e) of the Revenue Act of 1926, 26 U.S.C.A. § 411(e).

(2) As the property here in question was held in joint tenancy at the time of the death of Leveret T. Sheets, it was taxable as part of his gross estate unless the wife in acquiring it from him had given adequate and full consideration for her interest in money or money's worth. Revenue Act 1926, c. 27, § 302(b), 44 Stat. 9, 70, 26 U.S.C. § 411(b), 26 U.S.C.A. § 411(b). The consideration which she gave for it was her agreement to relinquish her marital rights in her husband's estate, and at the time of the transaction (November 2, 1928) Congress had not yet declared by direct legislative definition whether or not such a relinquishment would constitute the consideration referred to in the statute. Several courts had considered somewhat similar language raising the question whether a surrender of dower rights constituted "a fair consideration in money or money's worth" for a transfer in contemplation of death, and it had been decided in the affirmative, Ferguson v. Dickson, 3 Cir., 300 F. 961; McCaughn v. Carver, 3 Cir., 19 F. 2d 126; Stubblefield v. U. S., Ct.Cl., 6 F. Supp. 440, and also in the negative, Mercantile Trust Co. v. Hellmich,[1] T.D. 3545 III-1 Cumulative Bulletin 473, without determination by the Supreme Court. But the exact verbiage of this section, "adequate and full consideration in money or money's worth," had not been construed in connection with relinquishment of marital rights in any of the cases called to our attention. The statute, however, provided, at the time of this transaction, that any interest of the surviving spouse in the estate of the decedent existing as dower, curtesy, or by virtue of a statute creating an estate in lieu of dower or curtesy should be taxable. Revenue Act of 1926, c. 27, § 302(b), 44 Stat. 9, 70, 26 U.S.C. § 411(b), 26 U.S.C.A. § 411 (b).

The situation was therefore presented that the estate of a decedent was entitled to no deduction from tax on account of statutory rights thereto existing in the surviving spouse, but if a contract had been made by which the surviving spouse was to receive something from decedent's estate in consideration of a waiver of the statutory rights of such spouse, then there was a question (which the courts had not decided) whether deduction should be made. Accordingly, and to meet this situation,[2] Congress passed the amendment restricting the definition of "consideration in 'money or money's worth.'" The amendment reads:

"For the purposes of this [subchapter] title [Internal Revenue] a relinquishment or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration 'in money or money's worth.'" Revenue Act of 1932, c. 209, 47 Stat. 280, 26 U.S.C. § 412, 26 U.S.C.A. § 412.

It cannot be seriously contended that the language of this provision failed to cover such a transaction as is here involved. Although the provision was enacted as an amendment to section 303(d) of the Revenue Act of 1926, its express terms make it applicable to the whole title of which section 302(e) is part and therefore necessarily amend section 302(e) of the act.

Read in the light of the amendment, section 302(e), 26 U.S.C.A. § 411(e), now re-

[1] No opinion for publication.

[2] Report of Senate Finance Committee accompanying Revenue Act of 1932.

quires that the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property to the extent of the interest therein held as joint tenants by the deceased and any other person; and the proviso of the section is qualified so that where it is shown that the property held in joint tenancy has been at any time acquired from the decedent, no part of the value can be excepted from the gross estate where the consideration was merely the relinquishment of marital rights.

. It is contended that the amendment should not be held to apply in the computation of the gross estate of the decedent herein notwithstanding he came to his death on June 9, 1932, subsequent to the enactment of the amendment of June 6, 1932. The argument is that Congress intended it to apply only to property held in joint tenancy which was acquired from the decedent after the date of the amendment. But we think that the amendment should be regarded as a declaratory definition of terms and that section 302(e) must be read as it is written with the meaning of its terms settled by the amendment. By its express terms the section covers property held in joint tenancy "which is shown to have been acquired from the decedent at any time". Whether Mr. Sheets would have any interest in any property as a joint tenant with another at the time of his death could not be known until he died. Thereupon the taxable estate was to be computed, as required by the law, as it was at the time of death, and as the law then read, it was applicable to property held in joint tenancy acquired from the decedent at any time.

It was held in Knox v. McElligott, 258 U.S. 546, 42 S.Ct. 396, 66 L.Ed. 760, that Congress had not intended to require the inclusion in the gross estate of property held under a joint tenancy created prior to the passage of the statute of 1916 which was involved in that case. The court found nothing in the act to indicate Congressional intent to include prior existing joint tenancies. Shwab v. Doyle, 258 U.S. 529, 42 S.Ct. 391, 66 L.Ed. 747, 26 A.L.R. 1454, was of similar import. But probably for the purpose of meeting the reasoning of the Supreme Court in those cases, Congress passed section 302(h), 26 U.S.C.A. § 411(h), providing that section 302(e), 26 U.S.C.A. § 411(e), should apply to interests in joint tenancy referred to therein "whether made, created, arising, existing, exercised, or re-

linquished before or after [February 26, 1926] the enactment of this act," and since then the Supreme Court has recognized the controlling effect of subdivision (h) in Gwinn v. Commissioner, 287 U.S. 224, 226, 53 S.Ct. 157, 77 L.Ed. 270; Third National Bank & Trust Co. v. White, 287 U.S. 577, 53 S.Ct. 290, 77 L.Ed. 505; Griswold v. Helvering, 290 U.S. 56, 54 S.Ct. 5, 78 L.Ed. 166; Nichols v. Coolidge, 274 U.S. 531–539, 47 S.Ct. 710, 711, 712, 71 L.Ed. 1184, 52 A.L.R. 1081. We think that Congress has made its intention clear that section 302(e), as amended by the Act of 1932, shall apply to interests in joint tenancy held by decedents dying after June 6, 1932, regardless of when the joint tenancy was created.

(3) To so tax the property held in joint tenancy at the time of death was not violative of the due process clause of the Fifth Amendment. All of the property held in the joint tenancy belonged to and came from the husband, and his death was the "generating source of important definite accessions to the property rights" of the surviving spouse. All that the wife had given for the interest held in joint tenancy was her agreement to waive certain of her marital rights in her husband's property. Such interests of the wife were included in the husband's gross estate under section 302 (b) and were taxable. As dower and marital rights were taxable, it fitted in with the general scheme of taxation to keep it taxable, notwithstanding its transformation into interests in joint tenancy in the husband and wife. The amendment which defined by limiting the meaning of the term "consideration 'in money or money's worth,'" although it excluded inchoate dower rights from the definition, was not arbitrary, capricious, or a confiscation or deprivation of property without due process.

The cases of Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081; Coolidge v. Long, 282 U.S. 582, 51 S.Ct. 306, 75 L.Ed. 562, and Untermyer v. Anderson, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645, cited and relied upon by the petitioners, are plainly distinguishable. The first case involved the question whether property transferred by an irrevocable trust years before there was any federal estate tax law in effect could be treated as a transfer intended to take effect in possession or enjoyment at or after death within the meaning of the federal estate tax law. Coolidge v. Long, supra, presented the same question under a state succession tax law.

The court held that the statutes could not be made to apply retroactively to transfers antedating the statute, where death brought about nothing more than the coming into possession of an estate which already had been irrevocably vested in the remainderman. Similarly, in Untermyer v. Anderson, supra, it was decided that a federal gift tax could not be imposed on a gift fully consummated before there was any gift in effect.

The Supreme Court has recognized that the principles decided in Nichols v. Coolidge, supra, and related cases, are not controlling upon the question of subjecting jointly owned property to the estate tax. In Tyler v. United States, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758, the court stated that it was the *shifting of economic benefits* of property at the time of the decedent's death which justified the imposition of an estate tax with respect to property held by the decedent and another as tenants by the entirety; and Third National Bank & Trust Co. v. White, 287 U.S. 577, 53 S.Ct. 290, 77 L.Ed. 505, affirming, per curiam, 1 Cir., 58 F.2d 1085, affirming, D.C., 45 F.2d 911, must be deemed to hold that the full value of property held by the decedent and his wife under a tenancy by the entirety created prior to the enactment of any federal estate tax law could be reached by the tax. To the same effect are Robinson v. Commissioner, 6 Cir., 63 F.2d 652, certiorari denied, 289 U.S. 758, 53 S.Ct. 790, 77 L.Ed. 1501; Bushman v. United States, Ct.Cl., 8 F.Supp. 694, certiorari denied, 295 U.S. 756, 55 S.Ct. 913, 79 L.Ed. 1699; Putnam v. Burnet, 61 App.D.C. 393, 63 F.2d 456.[3] See, also, Phillips v. Dime Trust & Safe Deposit Co., 284 U.S. 160, 52 S.Ct. 46, 76 L.Ed. 220, where the tenancy was created before the passage of the applicable statute but after the first estate tax law was enacted. Similarly, in Gwinn v. Commissioner, 287 U.S. 224, 53 S.Ct. 157, 77 L.Ed. 270, the court held that the tax could be imposed with respect to joint tenancies created before the enactment of the statute. The court said (287 U.S. 224, at pages 228, 229, 53 S.Ct. 157, 158, 77 L.Ed. 270):

"Although the property here involved was held under a joint tenancy with the right of survivorship created by the 1915 transfer, the rights of the possible survivor were not then irrevocably fixed, since under the state laws the joint estate might have been terminated through voluntary conveyance by either party, through proceedings for partition, by an involuntary alienation under an execution. Cal.Code Civ. Procedure, § 752; Green v. Skinner, 185 Cal. 435, 197 P. 60; Hilborn v. Soale, 44 Cal.App. 115, 185 P. 982. The right to effect these changes in the estate was not terminated until the cotenant's death. Cessation of this power after enactment of the Revenue Act of 1924 presented proper occasion for imposition of the tax. The death became the generating source of definite accessions to the survivor's property rights. Tyler v. United States, supra. See Saltonstall v. Saltonstall, 276 U.S. 260, 48 S.Ct. 225, 72 L.Ed. 565; Chase National Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397.

"Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081; Untermyer v. Anderson, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645; and Coolidge v. Long, 282 U.S. 582, 51 S.Ct. 306, 75 L.Ed. 562, are inapplicable. In them the rights of the survivors became finally and definitely fixed before the passage of the act—nothing was added as the result of death."

The same conclusion was reached in Griswold v. Helvering, 290 U.S. 56, 54 S.Ct. 5, 78 L.Ed. 166.

The effect of the recent affirmance by the Supreme Court, 58 S.Ct. 525, 82 L.Ed. ——, per curiam, in Foster v. Commissioner, 9 Cir., 90 F.2d 486, is to settle the law that it was not violative of constitutional rights to include the total value of property held by the decedent and his surviving wife as joint tenants in decedent's gross estate.

The language used by the Supreme Court in Tyler v. U. S., 281 U.S. 497, 50 S.Ct. 356, 359, 74 L.Ed. 991, 69 A.L.R. 758, is, we think, directly apposite to the situation presented by the amendment here in question. "The evident and legitimate aim of Congress was to prevent an avoidance, in whole or in part, of the estate tax by this method of disposition during the lifetime of the spouse who owned the property, or whose separate funds had been used to procure it; and the provision under review is an adjunct of the general scheme of taxation of which it is a part, entirely appropriate as a means to that end." Gwinn v. Commis-

---

[3] See, contra, Bowers v. Commissioner, 7 Cir., 90 F.2d 790; Helvering v. Bowers, 58 S.Ct. 525, 82 L.Ed. ——.

sioner, 287 U.S. 224, 228, 53 S.Ct. 157, 158, 77 L.Ed. 270.

The majority opinion of the Board of Tax Appeals is to the effect that the petitioners failed to prove that the wife received or acquired her interest in the property in question for an adequate and full consideration in money or money's worth (or for an amount less than such consideration) regardless of the amendment of 1932, and we find no error in that conclusion. We also agree that no consideration in money's worth was shown by the delay in the divorce case which the wife agreed to without consenting to a dismissal or termination of the case. We think the conclusion of the Board of Tax Appeals was right.

Affirmed.